## Commonwealth *versus* Ahl.

*Pardon of Offence and Conviction, effect of on Sentence of Quarter Sessions.*

1. A pardon by the governor of a person convicted of fornication and bastardy, when pleaded before sentence, discharges the defendant from liability for costs as well as for the maintenance of the·bastard child.

2. The order of maintenance is a part of the sentence; and until it is pronounced, the right of the prosecutrix to the periodical payment of money does not vest: hence, where the defendant was pardoned before sentence, the court had no power to make an order of maintenance.

CERTIORARI to the Quarter Sessions of *York county.*

In this case, which was a prosecution in the name of the Commonwealth against David Ahl for fornication and bastardy, committed on Mary Dalhousen, there was a writ of error to the Quarter Sessions, and also an appeal from the decree of the court remitting the forfeited recognisances of the defendant Ahl and his surety.

The indictment was in the common form, and charged that the defendant, Dr. David Ahl, on, &c., at, &c., did commit fornication with a certain Mary Dalhousen, and then and there did beget a male bastard child on her body, contrary, &c. To this the defendant pleaded not guilty, was put on his trial, and after a hearing of the case, was convicted. A motion for a new trial was made on the ground that a certain conversation of third persons, on the subject of the prosecution, had taken place at a public-house pending the trial, in the hearing of one of the jurors. On the 2d January 1860, a new trial was granted by the court.

The second trial of the defendant took place August 30th 1860, which again resulted in a verdict of guilty. A motion was again made for a new trial, but was overruled by the court.

Peter Ahl, Sr., the father of the defendant, had entered into recognisance at April Sessions 1860, for the appearance of the defendant at August Sessions following; but the defendant failed to appear after trial at either August, November, or January Sessions·succeeding. On the 12th of January 1861, the recognisance was forfeited absolutely, and process awarded to arrest the defendant and bring him into court for sentence. He was arrested accordingly and brought to York, where he again entered into recognisance with his father as surety in $1000, for his appearance in court on the 4th day of February 1861. On that day he again failed to appear, and his recognisance, and that of his bail, was forfeited. The same day the court allowed an *exoneretur* to be entered on the recognisance of the bail, which had been forfeited on the 12th of January 1861, on the

[Commonwealth *v.* Ahl.]

ground that a new recognisance had been given.    The recognisances forfeited on the 4th February 1861 were not sued out. On the 26th day of August 1861, the defendant came into the Quarter Sessions, and by his counsel moved the court to respite and cancel all the recognisances in the case previously entered into and forfeited, and particularly that entered into January 25th 1861, and forfeited February the 4th 1861.    No grounds were alleged as the basis of this motion, but it was intimated that the defendant was ready to appear.    The counsel for the Commonwealth refused either to consent to any order or decree of the court, or to accept notice on behalf of the prosecutrix; whereupon the court directed notice to be given to Mary Dalhousen personally.    On the 30th of August 1861, the defendant's motion was granted, and the court cancelled the recognisances accordingly.    When the defendant stood at the bar of the court, ready to receive his sentence, and while the order cancelling the recognisances was being made and entered, and the president judge had commenced to pronounce the sentence of the law upon the conviction on record, a pardon was produced, and pleaded in bar of the sentence, and the defendant moved for his discharge without day.    This motion the court refused, and ordered the defendant to enter into recognisance for his appearance at November Sessions 1861.    On the 7th of November the defendant came into court and renewed his motion to be discharged, and produced his pardon.    The Commonwealth denied the validity of the pardon, because it was improperly obtained by false, deceptive, and fraudulent misrepresentations to the governor, and asked the court to direct an inquiry into the facts.    The Commonwealth further averred that, admitting the validity of the pardon, it was not effective either to prevent the order of the court for the maintenance of the bastard child or to discharge the defendant from payment of the costs of prosecution.    All these objections on the part of the Commonwealth were, however, overruled, and the judgment of the court (FISHER, P. J.) was entered January 6th 1862, under the following opinion :

"David Ahl was convicted of fornication and bastardy on the body of Mary Dalhousen.    A new trial was granted, and the defendant was again convicted.    A motion for a new trial was again made, argued, and refused.    On the 16th August 1861, he appeared before the court to receive sentence, when he produced a pardon from Governor Curtin, which is as follows :—

" ' Pennsylvania, *ss.*—A. G. Curtin,

" ' In the name and by the authority of the Commonwealth of Pennsylvania.

Andrew G. Curtin, Governor of the said Commonwealth,

" ' *To all to whom these presents shall come, sends greeting :*

[Commonwealth v. Ahl.]

" 'Whereas, at a Court of Quarter Sessions in and for the county of York, held at the borough of York, in said county, on the 30th day of August, A. D. 1860, a certain David Ahl was convicted upon a certain indictment, charging him with fornication and bastardy.

" 'And whereas, application has been made to me for the pardon of the said David Ahl, and in that behalf Andrew Anderson, one of the traverse jury, has represented that he believed at the time of the trial that the verdict rendered was against the evidence, and that he was overruled and induced by others on the jury to yield the verdict of guilty, and that he considers the said David Ahl a deeply injured man. And George Anstine and Michael Kurtz, two other of the jurymen, have further represented that they were under a misapprehension of the case, and recommended that he be pardoned.

" ' And whereas, there has been laid before me a written communication from the Hon. William Strong, one of the justices of the Supreme Court of Pennsylvania, in which he says to the person therein addressed, that under the circumstances of the case he shall always believe the said David Ahl to be innocent. And whereas, many credible and influential citizens of said county and vicinity, amongst whom are H. L. Fisher, H. G. Bussey, V. K. Keesey, William J. Shearer, J. B. Bratton, W. H. Miller, E. Cornman, and J. W. D. Gillelan, Esquires, together with Honourables Jeremiah Schindel, E. D. Crawford, Kennedy L. Blood, H. S. Mott, and W. H. Welsh, and John Manifold and Daniel Reiff, representatives of the state legislature, have declared their belief in the innocence of the said David Ahl, and have earnestly solicited that executive clemency should be extended to him.

" ' Now know ye, That, in consideration of the premises, I have, by virtue of my constitutional prerogative and authority, pardoned the said David Ahl, and he is hereby fully pardoned of the said offence and conviction accordingly. Given under my hand and the great seal of the state at Harrisburg, this thirtieth day of May, in the year of our Lord one thousand eight hundred and sixty-one, and of the Commonwealth the eighty-fifth.

" ' By the Governor,

" ' ELI SLIFER,

" ' Secretary of the Commonwealth.'

" Upon the production of the pardon the Commonwealth asked to have time granted to enable her to make some inquiry in relation to the manner in which it was obtained, and to ascertain whether it is genuine. Upon this application the court continued the case until the November term. On the 7th of that month the defendant filed the following suggestion:—

[Commonwealth *v.* Ahl.]

" ' And now, to wit, November 7th 1861, the above-named de-
.fendant, David Ahl, comes into court and by his counsel moves
that he be discharged from his recognisance and be permitted to
go hence without day, and further that judgment be arrested on
the verdict of guilty heretofore rendered against him by the jury ;
and to support and sustain these motions the said defendant
David produces here and hands to the court the full pardon of
the said offence and conviction by Andrew G. Curtin, the governor
of the Commonwealth, under the great seal of the Commonwealth,
issued agreeably to the constitution and in. due form of law, on
the 30th day of May 1861.'

" To which the Commonwealth replied by the following repli-.
cation :—

" ' The defendant having produced. in court as a bar to the
sentence in the above-stated case, a certain paper writing which
he alleges to be a pardon granted to him by the governor of the
said Commonwealth in the above-stated case, the said Common-
wealth by the district attorney appears and denies·the validity
of the said alleged pardon, for that the said paper was obtained
improperly, unduly, and by deceptive, false, and fraudulent
representations, and asks this court to direct an inquiry into the
facts of the case in such form as the court may think proper,
either by an issue or in a more summary way upon notice and
depositions ; and the court is further asked to detain the defend-
ant in the mean time upon recognisance with surety to appear
and abide the sentence of the court.

" ' W. C. CHAPMAN, District Attorney.'

" In addition to which the Commonwealth by her district
attorney, and by leave of the court, filed a paper, of which the
following is a copy :—

" ' If the court should refuse the above application, the motion
of the defendant is objected to because the alleged pardon pur-
ports only to pardon the offence of fornication, and because it is
not within the power of the governor to remit the liability for an
order of maintenance and the costs of prosecution.'

" Whereupon the court granted a rule to either party to take
testimony should they desire it, and ordered the case to be argued
on the 7th of December. On the hearing, no testimony was offered
to prove, nor was it pretended that the paper produced as the
evidence of a pardon was a forgery, nor that it was not duly
delivered to the defendant by the proper authority. Had such
evidence been offered it would have been received and the pardon
declared of no avail. But with the understanding that if testi-
mony was admissible to prove by parol that the pardon was
obtained improperly, unduly, and by deceptive, false and fraudu-

lent representations, time would be allowed the Commonwealth to make the proof. The question was argued whether parol evidence could be received tending to prove that false representations were made to the governor of the innocence of the defendant, and of the bad character and conduct of the prosecutrix, and that the evidence given on the trial of the case was misrepresented to him, which induced him to grant the pardon, but which representations were not stated by the governor in the pardon as the reasons inducing him to the act. The court think no such evidence could be received, and refuse to allow the Commonwealth further time to take the testimony.

"The governor having set out in the pardon that his reasons for granting it were that certain representations had been made to him by jurors and others named in the pardon, it must be taken that these were his reasons, and no evidence ought to be received to controvert them or to prove that any other inducements led to the pardon. The governor by the constitution has the power to remit fines and forfeitures, and to grant reprieves and pardons. If in the exercise of that prerogative representations are made, or evidence is submitted to him upon which the applicant relies, he and he only is to decide what weight and credence ought to be given to them, and whether they are sufficient to induce him to exercise his clemency. Doubtless much is written and said on such occasions which he disregards; but having decided to exercise the pardoning power, he places his reasons on the face of the grant, and I know of no tribunal that has the right to inquire into them. And here I might remark that much of the reasoning adopted by the Supreme Court in the case of Cooper v. Erie Railroad, cited by the counsel for the appellant, is applicable to this case. Should courts undertake to rehear the matter, and to decide that a pardon was void because the governor was imposed upon in matters not appearing on the pardon, the power to grant them would virtually be usurped by a tribunal in which the constitution had not vested it. It would in fact be an allowance by the courts of an appeal from the acts of the executive. If when pleaded its validity can be inquired into, as if it was a private deed or grant, I can see no reason why when offered in evidence to qualify a convict witness it is not equally open to inquiry. Such a practice would lead to insufferable delay and confusion in the proceedings of courts. I have examined all the sources of information, British and American, within my reach, and I have not been able to find any case allowing parol evidence to be given, nor indeed any in which it was offered to make proof of the kind here desired; and in the only American one, State v. McIntyre, 1 Jones' Law Rep. (N. C.), the judge who delivered the opinion of the court said: 'We can

[Commonwealth *v.* Ahl.]

look only at the record of which a copy of the pardon is a part, and can take notice of nothing *aliunde*.'

" It is further contended that the pardon is void upon its face, because it is stated therein that Andrew Anderson, one of the traverse jurors, has represented ' that he believed at the time of the trial that the verdict rendered was against the evidence; that he was overruled and induced by others on the jury to yield the verdict of guilty, and that he considered the said David Ahl a deeply injured man.' When in fact he was a juror on the first trial, and not on the second, as the governor was made to believe. This objection leads to the inquiry what power the courts have to declare a pardon void because it exhibits internal evidence that it was obtained by a suppression of the truth, or the suggestion of a falsehood.

" Lord Coke, in his Institutes, defines a pardon to be ' an act of mercy, whereby the king, either before attainder, sentence, or conviction, as after, forgiveth any crime, offence, punishment, execution, right, title, debtor, duty, temporal or ecclesiastical.'

" Treating a pardon as an act of mercy, he states that a party which informeth not the king truly is not worthy of his grace or forgiveness, and therefore either *suppressio veri* or *expressio falsi* doth avoid the pardon: Inst. 238; 4 Bl. 400.

" But must not this suppression of truth, or suggestion of falsehood, be judged of by the record of the conviction and proceedings against the defendant, and by the suggestions stated in the pardon as inducing it. Lord Coke seems so to understand it, for he continues: ' A man commits felony, and is attainted thereof, or is abjured for the same, the king pardoneth him the felony, without any mention of the attainder or abjuration, the pardon is void. But if a man be attainted of burglary, and by the pardon all felonies, &c., are pardoned (except burglaries), the attainder and burglary be excepted.'

" The king pardoneth to A. a felony whereof he standeth indicted and attainted, and in truth he is not indicted or attainted, this is *expressio falsi*, and maketh the pardon void: 3 Inst. 238. Hawkins, in his Pleas of the Crown, vol. 2, § 8, says: ' It seems to be laid down as a general rule in many books, that where it may be reasonably intended that the king, when he granted such pardon, was not fully apprised both of the heinousness of the crime, and also how far the party stands convicted thereof upon record, the pardon is void, as being gained by imposition upon the king.'

" In the case of McIntyre, already referred to, the matters relied upon to avoid the pardon were the record of the court and the pardon itself. The latter recited a conviction and sentence of imprisonment, and then proceeded to remit so much of the judgment as extended to imprisonment, upon the express condi-

tion that the fine and costs be paid. The pardon was declared void, first, because, according to the statute of North Carolina, an appeal having been taken to the Supreme Court, there was no subsisting judgment, as the pardon represented. Secondly, because the pardon releases the imprisonment upon condition that the fine and costs be paid, when in fact there was no fine imposed. Thirdly, because the condition precedent upon which the pardon was to take effect could not be performed; and fourthly, because the pardon and record taken together showed that the governor was imposed upon and deceived. But if, in the case under consideration, the governor was mistaken, that could not avoid the pardon unless the grantee had caused the misapprehension, which does not appear. That it must appear, we think the authorities establish. 'If the king be not deceived by any matter suggested by the grantee, but is only mistaken in his affirmation or surmises, although it be in the law itself, such grants are good, and such construction of them should be made as tends to their support:' Viner Abr. vol. 17, p. 100.

"Besides, it is well settled that a pardon must be most strictly construed against the king or state, and most beneficially for the subject: 4 Bl. —; Ex parte Hunt, 5 English's Arkansas Rep. 224. We therefore hold that there is nothing on the face of the pardon that ought to avoid it.

"The next question which arises relates to the effect of the pardon. It is contended that it does not relieve the defendant from the payment of the costs; and secondly, that notwithstanding the pardon, the court ought to make a decree for the maintenance of the illegitimate child.

"A pardon operates as a release, and is to be construed as if the word release was inserted therein: Cope *v.* Commonwealth, 4 Casey 303. But notwithstanding it operates as a release, it cannot discharge a vested right, and therefore does not discharge costs after judgment. To this point we have many authorities. A contempt in the spiritual court is purged by a pardon; but if costs are awarded, they are not discharged, because the costs are vested: Croke Charles 199. So also in Wilcox's Case, W. was indicted and convicted of a nuisance, fined, and afterwards pardoned. It was held that the defendant was only discharged of the fine, but not of the abatement of the nuisance, 'for that is not a punishment, but a removal of that which is a grievance to other people:' Salk. 458.

"In Downing's Case, 10 Johns. 233, D. was convicted of a felony, and sentenced for life to imprisonment, which rendered him *civiliter mortuus*, but he was afterwards pardoned. It was held that he could not reclaim his wife, who had married after his conviction and sentence, nor recover his real and personal estate, which had been sold by an administrator appointed to

[Commonwealth *v.* Ahl.]

settle his estate upon his civil death, because. other rights had accrued which the pardon could not discharge. And upon the same principle it has been held in Pennsylvania and in other states, that a pardon, after judgment, does not release the costs of the proceeding: Commonwealth *v.* Duncan, 4 S. & R. 451; Commonwealth *v.* Dennison, 9 Watts 142; 5 Gilman 214; 21 Miss. 272; 8 Blackford 229.

" But where there is no vested right in third persons, a pardon operates as a complete release of all final consequences: Cope *v.* Commonwealth, 4 Casey 302–3.

" In Hall's Case, 5th Rep. 52, it was held that where sentence is given, and costs taxed, the king's pardon could not release them; but it was said that ' if the pardon had been obtained before the sentence, it would have discharged the whole, for then the court could not have proceeded to any sentence of the principal, and by consequence not of the costs, which are but accessary.'

" In Duncan's Case, 4 S. & R. 449, D. was convicted of adultery and bastardy, and after sentence pardoned. It was held that the right to recover the costs of prosecution was not vested, and that the pardon released the defendant from their payment.

" In Commonwealth *v.* Dennison, 9 Watts 142, it is said by Rogers, Justice, ' such is its force, that even in the case of costs they are discharged by a pardon before judgment.'

" In Playford *v.* Commonwealth, 4 Barr 144–5, the defendant was sentenced, on a conviction of assault and battery, to pay costs after he had filed his pardon in court, and the Supreme Court affirmed the judgment, and delivered the following opinion: · *Per Curiam.* ' The point before us was ruled in Duncan *v.* The Commonwealth, 4 S. & R. 449, on grounds which we see no reason to question, and feel no disposition to disturb.' We cannot admit that this case is of any authority, if it is held to decide that a pardon before sentence does not discharge costs if the pardon be pleaded. But we are inclined to think that the judgment was affirmed upon the ground taken by the counsel for the Commonwealth in the argument: that the mere filing of the pardon does not make it a part of the record, and that to entitle the party to its benefit, it must be pleaded. In view, therefore, of the authorities cited, we hold that the pardon in question discharged the defendant from any liability to pay costs.

" The next question is, can the court make an order that the defendant pay periodically a fixed sum for the maintenance of the bastard child ?

" By our Act of Assembly of 1705, it is provided, ' that any person being legally convicted to be the reputed father of a bastard child, shall give security to the court, town, or place where such child was born, to perform such order of maintenance of

[Commonwealth v. Ahl.]

such child, as the justices of the peace in their sessions shall direct or appoint.'

"Before an order of maintenance can be made, the right to it must vest. When does it vest? At the instant of the birth of the child? When the information is made? When the bill is found, or when the verdict is rendered? I apprehend at neither of these times, but only when the sentence is passed; and if no sentence can be passed because the conviction is set aside, there is no basis to support such a decree. And this view seems to be in accordance with the rulings of our own Supreme Court. In Booz v. Engarman, 6 Harris 264, it is said, 'after sentence is pronounced, should the court in the order of maintenance direct a sum of money to be paid to the prosecutrix by the party accused, her right to the money becomes vested by the adjudica-tion, and an escape afterwards is undoubtedly a good foundation for an action in her name. But until such order be made in her favour, she has no cause of action against the accused, or no legal interest in or control over the warrant issued for his arrest. The criminal proceeding is not in her name, or for her benefit, but in the name of the Commonwealth, for the purpose of enforc-ing the moral duty of maintenance, and for the protection of the public from the expense.'

"In Downing v. The Commonwealth, 9 Harris 216–17, Booz v. Engarman is recognised, and it is again asserted, that a prose-cutrix in a case of fornication and bastardy can have no legal or vested interest in the proceeding until after sentence, because it may be that when the sentence is pronounced the court will not order the payment of any money to her.

"In Commonwealth v. Strayer, decided at the May Term, 1861, and not reported, it was held that the Quarter Sessions could decree the money to be paid to the mother, the clerk of the court, to a justice of the peace of the neighbourhood, or other person. It seems, therefore, that the right to receive the main-tenance can only be a consequence of the sentence. And here we are led to inquire what effect the executive intended the par-don to have, or, in other words, what did he pardon? The instru-ment itself recites that 'a certain David Ahl was convicted upon a certain indictment charging him with fornication and bastardy,' and after giving the reasons for the grant, it concludes, 'that in consideration of the premises, I have, by virtue of my official prerogative and authority, pardoned the said David Ahl, and he is accordingly fully pardoned of the said conviction and offence.' In using these words, the governor evidently intended that the par-don should set aside and annul the verdict, and arrest the judg-ment. I cannot perceive how any vested right, order, or decree can be founded upon, or flow from a conviction thus circum-stanced. But the case of Commonwealth v. Duncan is cited as

[Commonwealth *v.* Ahl.]

in point; there the adultery only was pardoned, and the bastardy specially excluded. But here everything is included—fornication, bastardy, offence and conviction—all pardoned.

"We therefore think there is nothing upon which we can found an order of maintenance.

"And now, to wit, January 6th 1862, the court enter judgment that the defendant, David Ahl, go without day."

The case was then removed into this court, as above stated, by the Commonwealth, and the following errors assigned:—

1. The court erred in remitting and discharging the recognisances of the defendant, David Ahl, and his surety Peter Ahl, forfeited on the 4th day of February 1861.

2. In not permitting an inquiry whether the pardon produced by David Ahl was not obtained by fraud.

3. In their decision on the evidence before them of fraud in procuring the pardon.

4. In allowing the pardon.

5. In not pronouncing sentence on David Ahl for the costs of prosecution.

6. In not making an order for the payment of the lying-in expenses, and for the payment of a weekly sum for the maintenance of the illegitimate child.

The case was argued in this court for the Commonwealth by *W. C. Chapman*, district attorney, with whom were *John Evans* and *John L. Mayer;* and by *C. F. Black, V. K. Keesey*, and *J. S. Black*-for the defendant.

The opinion of the court was delivered, May 22d 1862, by

LOWRIE, C. J.—We doubt not that the written opinion of the learned judge below is quite sufficient to justify his rejection of parol evidence that the pardon was obtained by a fraud upon the governor. We do not judge that question in this case, because, in criminal cases, it cannot come before us in regular form by bill of exceptions. Nor do we review the remission of the recognisance, because that question cannot be brought up in this form, the sureties being no parties to this writ of error.

We need not say whether the Quarter Sessions may or may not disregard a pardon that bears on its face the evidence that it was procured by fraud, because we think that this one does not do so. It recites defectively, but not falsely, the part performed by one of the jurors; and this is not sufficient evidence of fraud, and it is all that is relied on.

The pardon must, therefore, be respected by the court; and how, then, could there be any sentence? The costs and the lying-in expenses, and the maintenance of the child, are essential parts of the sentence in such cases, and can be imposed only

[Commonwealth *v.* Ahl.]

where sentence can lawfully be pronounced.   The pardon prevents the sentence entirely, and therefore discharges from them as well as from any other consequence of the conviction.   This, too, is proved by the opinion of Judge Fisher.   The judgment was therefore right, that the defendant go without day.

Judgment affirmed.