12744

EX PARTE BESS

BESS v. PEARMAN, PENITENTIARY SUPERINTENDENT

(150 S. E., 54)

414

416

418

420

426

*Mr. N. J. Frederick,* for appellant,

*Mr. A. L. King,* also for appellant,

*Attorney General John M. Daniel,* and *Asst. Atty. Generals Cordie Page and J. Ivey Humphrey,* for respondent,

October 12, 1929.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is an appeal from an order of his Honor, Judge Townsend, Circuit Judge of the Fifth Judicial Circuit, refusing the application of Sallie Bess, wife of Ben Bess, in a *habeas corpus* proceeding, for an order discharging him from the custody of the superintendent of the South Carolina penitentiary. The facts are these:

The prisoner, Ben. Bess, was tried in the· Court of General Sessions of Florence County upon an indictment charging him with rape upon the person of one Maude Collins, and convicted. The sentence, dated June 7, 1915, was imprisonment in the penitentiary for a period of 30 years. The prisoner was duly committed and remained in the penitentiary until May 4, 1928. ˙

A short while before that date a petition for a pardon was presented to the Governor, accompanied by an affidavit of the prosecutrix, Maude Collins, to the effect that her testimony upon the trial of Ben Bess was false, and by certain letters and statements, including the unqualified recommendation of the solicitor, the Governor acted upon that petition on May 4, 1928, by issuing an order suspending the said sentence during the good behavior of the prisoner. Upon the issuance of this order he was released from the penitentiary.

Later, on May 12th, the Governor, "for divers good causes and consideration hereunto moving," issued an unconditional pardon to Bess. On June 21st, the Governor, by a verbal order, directed the superintendent of the penitentiary to confine Bess in the penitentiary "for safe-keeping until further directed from this office." Bess was recaptured and reconfined in the penitentiary, I assume under the verbal order. It appears that this step was taken in consequence of the fact that, after the pardon had been issued, considerable stir arose in Florence, and an effort was made to have the prosecutrix, Maude Collins, indicted for perjury. Pending this excitement and the result of action by the grand jury, the Governor ordered the prisoner to be returned to the penitentiary "for safe-keeping."

On July 14th, the wife of Ben Bess presented to Hon. W. H. Townsend, at Columbia, a petition for a writ of *habeas corpus,* that Ben Bess be brought before him, in order that the cause of his imprisonment be inquired into, etc.

The writ was signed and made returnable on July 19th. On July 16th, after the writ had been issued, the Governor confirmed by letter the verbal order given to the superintendent for the recapture of Bess, above referred to.

Later, on July 17th, the Governor issued an order reciting that "whereas, it has since been made to appear, and does now appear, and I am convinced that the affidavit which purported to be signed by the prosecutrix to the effect that Ben Bess was innocent, and upon which I relied in granting said suspension of sentence and purported pardon was false, and the representations moving me to grant the same were false and fraudulent, so that said suspension of sentence and purported pardon were obtained by fraud, and never became effective," and proceeded to "withdraw, cancel, and annul" the order of suspension and the unconditional pardon.

On the same day, July 17th, the Governor indorsed upon the record of the pardon in the office of the Secretary of State the following: "The within pardon is hereby canceled, annuled, and void, for the reason that I am convinced that it was issued on misinformation and obtained by fraud." On the same day the Governor made a like indorsement on the suspension of sentence.

On July 19th, the matter came up for a hearing before his Honor, Judge Townsend, as he had ordered. The Attorney General appeared for the respondent, who filed a return relying upon the attempted cancellation of the suspension and pardon. (Note. The verification by the respondent is dated in the record *July 10th*, which must be an error, as the writ was issued July 14th, and the return refers to the attempted cancellation by the Governor which did not take place until July 17th.)

After the reading of this return counsel for Bess offered in evidence the pardon, and moved for the immediate discharge of Bess upon the ground that said pardon was a complete and absolute reply to the return. Counsel also took the

position that the issue of fraud could not be raised in such a manner and in such a proceeding, because, the pardon being complete and regular in every respect upon its face, its legal efficacy could not be defeated or impaired by such an attack as was attempted to be made upon it. His Honor overruled the motion, and, over protest of counsel for Bess, remanded him to the penitentiary; at the same time he made an order (also over the protest of counsel for Bess), referring the matter to the master in equity for Richland County, to take testimony *on the question of fraud* and report the testimony, *with his findings thereon,* to his Honor, or to any other Judge having jurisdiction.

The master, over protest of attorneys for Bess, proceeded to take the testimony and report as required by the order. He found that no fraud whatsoever had been perpetrated, and that, while the woman may not have understood the full purport of the affidavit, no unfair advantage had been taken of her in the transaction. He also found that her statement as set out in the affidavit was entitled to more weight as evidence than her attempted repudiation of it, because the evidence established that her effort to repudiate was not made until after threats of prosecution for perjury had been made against her.

In due time the Attorney General, for the respondent, filed exceptions. These exceptions were argued before Judge Townsend on August 23d. The attorneys for Bess argued that his Honor was without jurisdiction to consider the question of fraud. However, in an order signed the same day, Judge Townsend, while sustaining the master's finding that on account of the threats of prosecution for perjury against the woman, there was less reason to believe the attempted repudiation than there was to believe the affidavit, held that fraud had been practiced in the transaction, and that because of such fraud the pardon was void and never took effect. The prisoner was thereupon remanded to the

South Carolina penitentiary, where he has ever since been, and now is being, held under the original sentence of the Court.

The main issue upon this appeal is whether the pardon issued by the Governor is open, in a *habeas corpus* proceeding, to an attack upon the ground that it was issued upon false representations made to the Governor; in other words, whether in such a proceeding it may be attacked upon the ground of fraud in obtaining it.

The exceptions, 25 in number, with subdivisions, raise many questions of regularity of the proceedings before his Honor, Judge Townsend, besides others; but in my opinion they may be disregarded, in view of a determination of the main issue as stated above.

I do not think that there can be a doubt of the power of a Court of equity, in a proper proceeding, to set aside and declare null and void a pardon which has been procured from the Governor by false representations of other species of fraud, nor that a pardon which bears upon its face the unquestionable proof of its invalidity may be so declared by the Governor, or by any one else whose duty may call for such a declaration; but when the pardon is upon its face regular, and the alleged fraud in its procurement depends upon issues of fact, neither the Governor, nor any one else short of a judicial tribunal, may rightly assume the function of deciding such issues of fact. In the present case, that is what the Governor essayed to do, without notice to the party most interested, and without the semblance of a judicial investigation.

There are some decisions to the contrary, but my investigation convinces me that the overwhelming weight of authority and reason is in favor of the foregoing principles. The general rule is that a pardon, assimilated to a deed, cannot be revoked after its issuance, delivery, and acceptance.

"The pardoning power cannot revoke a pardon once delivered, and accepted by the grantee or [his] agent." *Ex*

*parte Reno,* 66 Mo., 266, 27 Am. Rep., 337; *Rosson v. State,* 23 Tex. App., 287; 4 S. W., 897.

An unconditional pardon, delivered, cannot be revoked even for fraud. *Knapp v. Thomas,* 39 Ohio St., 377, 48 Am. Rep., 462.

No subsequent action of the executive or of the Legislature can revoke a pardon once tendered and accepted. *State v. Nichols,* 26 Ark., 74, 7 Am. Rep., 600.

The Governor has no power to revoke a pardon after delivery. *Ex parte Crump,* 10 Okl. Cr., 133, 135 P., 428, 47 L. R. A. (N. S.), 1036.

"A full unconditional pardon takes effect upon delivery either to the person who is the subject of the favor, or to some one acting for him or on his behalf. After delivery, a pardon cannot be revoked. The authorities, without any conflict whatever, deny to the Governor any such power and hold the pardon, when delivered, to be irrevocable [citing many cases]." *Ex parte Crump,* 10 Okl. Cr., 133, 135 P., 428, 431, 47 L. R. A. (N. S.), 1036.

In the notes to 59 Am. Dec., 575, Judge Freeman observes: "But a Court cannot go behind a pardon on *habeas corpus* to inquire into the regularity of the proceeding; nor can the question be raised whether the pardon was obtained by false and fraudulent pretenses; and where it appears on *habeas corpus* that the pardon is fair on its face and unconditional, that puts an end to any inquiry into the manner of obtaining it."

In *Ex parte Williams,* 149 N. C., 436, 63 S. E., 108, 22 L. R. A. (N. S.), 238, it was held, quoting syllabus: "The Governor cannot recall a pardon which he has forwarded to the sheriff for delivery to a prisoner, after the prisoner has complied with the conditions precedent on which it was granted."

"When the charter of the prisoner's pardon reached the hands of the warden, his constituted legal custodian, the

executive act of grace was complete, and forever irrevocable." *Ex parte Powell,* 73 Ala., 517, 521, 49 Am. Rep., 71.

"Simple intention on the part of the executive to bestow a pardon confers no right, and is perfectly nugatory until the intention may be said to be fully completed. This intention may be said to be fully completed when the pardon is signed by the executive, properly attested, authenticated by the seal of the State, and delivered, either to the person who is the subject of the favor, or to some one acting for him, or on his behalf. Whenever these things are done, the grantee, or donee of the favor, becomes entitled as a matter of right to all the benefits and immunities it confers, and of which he cannot be deprived by revocation or recall." *Ex parte Reno,* 66 Mo., 266, 27 Am. Rep., 337. See, also, *In re Edymoin,* 8 How. Prac. (N. Y.), 478; 20 R. C. L., 441; *Territory v. Richardson,* 9 Okl., 579, 60 P., 224, 49 L. R. A., 440; *Com. v. Ahl,* 43 Pa., 53.

As indicated above, there is a well-established exception to the general rule thus stated: that is, that as fraud destroys every transaction, it will destroy the efficacy of a pardon, if proven. The condition must appear by a judicial determination, not be the *ipse dixit* of any one, however high in executive station. That the Governor could not decide this issue I think is perfectly clear; that the proceeding conducted by his Honor, Judge Townsend, was *coram non judice,* I think is equally clear. *Habeas corpus* is not an action; it is a prerogative writ, forced upon a judicial officer by the Constitution of this State under a heavy penalty. It is a legal statutory proceeding, in no sense within the jurisdiction of that equity which may decree the cancellation of an instrument for fraud.

"An unconditional pardon, immediately operative," and which has been "delivered and accepted, cannot thereafter be revoked except for fraud in its procurement." *Ex parte Ray,* 18 Okl. Cr., 167, 193 P., 635, 640.

"Under all the authorities we have been able to find, the rule is that, when the Governor has issued an unconditional pardon, and it is accepted by the prisoner, and he is released thereunder, all power and control over the prisoner is gone. The Governor has no authority to revoke an unconditional pardon after its issuance, delivery, and acceptance. It is true that when a pardon had been obtained by fraud, when that fact is proven, it may be canceled and annuled by the proper tribunal; *but this must be legally ascertained before an unconditional pardon can be canceled, and the prisoner rearrested and confined.*" *Ex parte Rice*, 72 Tex. Cr. R., 587, 162 S. W., 891, 900.

"Though an unconditional pardon cannot, after acceptance, be revoked by the Governor, it may be revoked if it was obtained through fraud, in which case, if no tribunal is fixed by its terms for the determination of the issue, recourse may be had to the Courts." *Ex parte Redwine*, 91 Tex. Cr. R., 83, 236 S. W., 96, affirmed *Redwine v. Texas*, 261 U. S., 608, 43 S. Ct., 433, 67 L. Ed., 825.

"Before delivery and acceptance, a pardon may be revoked by the officer or body granting it; but, if the pardon is not void in its inception, it cannot be revoked for any cause after its delivery and acceptance are complete, for then it has passed beyond the control of the officer or body who granted it, and becomes a valid and operative act, of the benefits of which its recipient can be deprived only in some appropriate legal proceeding." *Ex parte Alvarez*, 50 Fla., 24, 39 So., 481, 484, 111 Am. St. Rep., 102, 7 Ann. Cas., 88, quoting 24 A. & E. Enc. L. (2d Ed.), 595.

"A pardon once granted will not be revoked, merely upon allegations that it was secured by fraud, *but the fraud must be judicially ascertained.*" *Ex parte Rice*, 72 Tex. Cr. R., 587, 162 S. W., 891, 892.

"A Court of equity has the power to investigate the title to a pardon which is attacked on the ground that it was pro-

cured by the applicant's fraud on the Governor." *Rathbun v. Baumel,* 196 Iowa, 1233, 191 N. W., 297, 30 A. L. R., 216.

An analysis of or extracts from the wonderfully learned, luminous, and convincing opinion of the Supreme Court of the State of Ohio, in the case of *Knapp v. Thomas,* 39 Ohio St., 377, 48 Am. Rep., 462, could not possibly do justice to it. The syllabus of the case is: "An unconditional pardon may not be revoked even for fraud," in a *habeas corpus* proceeding. The conclusion of the Court, in my opinion, is sustained by a wealth of learning and irresistible logic.

In the case at bar the prisoner had received the benefit of two proclamations from the Governor, one suspending his sentence during good behavior, and the other granting him an unconditional pardon. In the case of *State v. Renew,* 136 S. C., 302, 132 S. E., 613, it was held that the defendant, who had received the benefit of a suspended sentence during good behavior, was entitled to have the issue whether his suspended sentence had been violated submitted to a jury. The Court approved the reasons assigned therefor in a similar case, *State v. Sullivan,* 127 S. C., 186, 121 S. E., 47, 51, by the writer hereof, in his dissenting opinion. There it was said:

"His personal liberty would be just as much at stake as that of any other person accused, and in its protection he would be equally entitled to the due process of the law, the definition of which by Mr. Webster in the *Dartmouth College case,* 4 Wheat., 518, 4 L. Ed., 629, is as incapable of improvement as 'to gild refined gold': 'A law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial.' It is the bedrock of jurisprudence that no one shall be personally bound until he has had his day in Court, has been duly cited to appear, and has been afforded an opportunity to be heard. 'Judgment without such citation and opportunity wants all the attributes of a judicial determination; it is judicial usurpation and op-

pression, and can never be upheld where justice is fairly administered.' " This reasoning applies *a fortiori*, it would appear, to the beneficiary of a pardon.

The decree of the circuit Judge is reversed, and the prisoner discharged, without prejudice to the right of the state authorities to institute such a proceeding in equity as they may be advised to secure a judicial determination of the issue of fraud in the procurement of the pardon.

MR. CHIEF JUSTICE WATTS, MR. JUSTICE BLEASE, and MESSRS. CIRCUIT JUDGES DENNIS, SEASE, WILSON, MAULDIN, BONHAM, and GRIMBALL concur.

MR. CIRCUIT JUDGE HENRY (concurring) : In concurring in the filed opinion of Mr. Associate Justice Cothran, herein, my reasons therefor are herebelow stated:

Man, in his effort to protect the individual by organized government, provided in this organization for a sovereign, in America called executive. At first this sovereign was supposed "to do no wrong." Gradually, by revolution and strife, it was determined that the sovereign ought to do no wrong; next, that he will do no wrong; finally, by enactments of Parliament, he shall do no wrong. Hence his powers were hedged about by law, fixing so plain a path for his feet that he could do no wrong. Traveling in this path brings us back to the original truism, the sovereign can do no wrong, because hedged about by law.

So far as Ben Bess is concerned, the Governor has followed an uncharted path, and consequently has done wrong. After pardoning Bess and reincarcerating him, it is the same as if an individual had made a deed of property, and, finding it had been obtained by fraud and deceit, repossessed himself of the property without due process of law or by force.

MR. JUSTICE CARTER (dissenting) : For an understanding of the issues involved in this appeal a brief statement of the history of the case is necessary.

In the year 1915 Ben Bess was tried and convicted in the Court of General Sessions of Florence County upon an indictment charging him with rape upon the person of Maude Collins, and was sentenced by the Court to imprisonment in the State penitentiary for a period of 30 years, and remained in the penitentiary until May 4, 1928, on which date the Governor of the State, his Excellency, John G. Richards, issued an order suspending the said sentence of the prisoner during his good behavior, and he was released from the penitentiary. Thereafter, May 12, 1928, the Governor issued what purported to be a full pardon to the prisoner. The said orders issued by the Governor were based upon a petition asking for a pardon of Bess, an accompanying affidavit of the said Maude Collins, certain letters, and a recommendation of the solicitor who represented the State at the trial of Bess under said indictment. Acting on a verbal order received from the Governor June 21, 1928, which verbal order was confirmed by a written order dated July 16, 1928, the respondent, James N. Pearman, superintendent of the South Carolina penitentiary, received and confined the said Ben Bess in the State penitentiary for safe-keeping. On the 17th day of July, 1928, the Governor issued an order whereby he withdrew, canceled, and annulled the suspension of sentence and the said purported pardon granted to the said Ben Bess on the 4th day of May and the 12th of May (respectively), 1928, for the reason, as stated by the Governor in said order, that the Governor was convinced "that the same were issued on misinformation and obtained by fraud," and an entry was made on the record of the Governor to the same effect.

On the 14th day of July, 1928, a petition was presented by Sallie Bess, wife of Ben Bess, to Hon. W. H. Townsend, Judge of the Fifth Judicial Circuit, asking for a writ of *habeas corpus* for the purpose of bringing before him the said Ben Bess, that his imprisonment in the State penitentiary

might be inquired into, and such proceeding had as the law and justice required. Judge Townsend issued the writ prayed for, which writ was directed to James N. Pearman, superintendent of South Carolina penitentiary, respondent herein, and was made returnable July 19, 1928. A return to the writ for the respondent, which return will be reported, was filed by the Attorney General, who appeared for the respondent at the hearing. At the hearing counsel for Ben Bess presented the purported pardon deed, to which reference has been made, and moved that he be "forthwith restored to his liberty, upon the ground that no legal cause had been shown by the return for his imprisonment."

This motion having been overruled by his Honor, Judge Townsend, his Honor referred the matter to J. C. Townsend, Esq., master in equity for Richland County, in which the writ was issued, to take and report the testimony with his findings thereon. The order of reference was opposed by counsel for Bess, and, when the matter was called up before the master, counsel for Bess appeared, but objected to going into the proceedings under the order of reference. This objection was overruled by the master and the reference proceeded. At the reference Ben Bess was represented by the same counsel who appear for him in this Court, and the respondent was represented by the Attorney General as Assistant Attorney General. After taking the testimony offered by the parties, the master reported the same, together with his finding of facts thereon.

The principal question involved in the case is whether or not the said suspension of sentence and the purported pardon deed were issued on misinformation and obtained by fraud, and, if so, whether or not that issue can be adjudicated in this proceeding.

The master's finding was to the effect that no fraud whatsoever was perpetrated against Maude Collins, who signed an affidavit which was used in connection with the petition

before the Governor for a pardon. It was this affidavit upon which the solicitor acted when he recommended to the Governor that the petition be granted, and it clearly appears from the testimony in the case that this affidavit was the moving factor in inducing the Governor to grant a suspension of sentence and later issue the purported pardon. The affidavit in question was to the effect that the testimony which the affiant gave upon the trial of Ben Bess was untrue, and that Ben Bess should not be serving any sentence therefor. While the master held that there was no fraud perpetrated upon this party in procuring the affidavit, he reached the conclusion from the testimony in the case that, on account of her "limited education and intelligence," she did not understand the full purport of the affidavit which she signed, and that her interpretation of the same, that it was only given with the intention of forgiving the accused, was different and at variance from the interpretation placed upon the same by the Governor, when he had before him the consideration of the petition for a pardon.

To the master's report the Attorney General filed exceptions, and the matter was heard by his Honor, Judge Townsend, August 23, 1928, upon the testimony taken and reported by the master, together with the findings thereon and exception thereto. At the hearing the Attorney General and his assistants presented arguments for sustaining the exceptions, and counsel·for Bess presented arguments *contra.* At this hearing before Judge Townsend, counsel for Bess took the position, as at the former hearing, that his Honor was without legal authority to render any judgment other than one that would restore Bess to his liberty, and again insisted upon their position that no order of reference could be issued in such a proceeding as the one then before the Court.

After due consideration, his Honor, Judge Townsend, sustained the second and third exceptions to the master's report, which exceptions were as follows:

"That the master erred, it is respectfully submitted, in holding and finding in paragraph 10 of the report that no fraud whatsoever was perpetrated against the affiant (Mrs. Maude Collins) in obtaining the affidavit repudiating her testimony given at the original trial; whereas, he should have held that the affiant was not informed and did not know the contents of said affidavit, as stated in paragraph 11 of said report, and that the same was, therefore, obtained from her on misinformation and by fraud.

"That the master erred, it is respectfully submitted, in not finding and stating affirmatively and positively that suspension of sentence and pardon were obtained from the Governor on misinformation and fraud, and that the Governor would not have signed the suspension of sentence by the said affidavit, which amounted to fraud upon the Governor and upon the State."

The said Ben Bess was thereupon, by order of Judge Townsend, issued in said matter, remanded to the custody of the State penitentiary. From this order Ben Bess has appealed to this Court, and asks a reversal upon the grounds set forth in his exceptions.

The appellant, Ben Bess, presents to the Court for its consideration 25 exceptions, but under our view of the case it is not necessary to consider these exceptions separately. As stated above, the main question involved in the appeal is whether or not the said suspension of sentence and the purported pardon deed were issued on misinformation and obtained by fraud, and, if so, whether or not that question can be adjudicated in this proceeding.

As to the first question, that the suspension of sentence and the purported pardon deed were issued on misinformation and obtained by fraud, we do not consider it necessary to enter upon a discussion of the testimony bearing on this question, and a review of the same in our opinion would serve no useful purpose. We deem it sufficient to state that we think the evidence amply supports the finding of Judge

Townsend "that the affidavit presented to the Governor [attached to the petition for a pardon] as the free and voluntary confession of the prosecutrix, was not such confession, first, because she did not fully understand the contents or purport when she signed; and, second, because she was induced to sign by bribery; and that the use of the affidavit, so obtained, to obtain the pardon from the Governor worked a *fraud* in obstruction of justice," and we may add, as we view the evidence, that the said purported pardon was issued on misinformation and obtained by fraud, which, as held by Judge Townsend, renders the pardon a nullity, and forbids the discharge of Ben Bess under it. The purported pardon being a nullity, no rights can be claimed thereunder. It was void from its incipiency, and should be regarded as having never had any force and effect in law. We fully agree with all of the findings of fact and conclusions of law of Judge Townsend, as set forth in his order issued in the cause, bearing date August 23, 1928, and think that the said Ben Bess was properly remanded to the custody of the state penitentiary.

In this connection we desire to state that we can readily understand how the solicitor was misled by the affidavit in question and caused to recommend a pardon for Bess, and we desire to further state that no blame whatsoever should be attached to the attorney who prepared the affidavit. In the preparation of the affidavit, the attorney acted upon information furnished by a third party; he had no conversation with the affiant, and had no intimation that a wrong was being done.

As to the second question, whether or not the issue of fraud can be adjudicated in this proceeding, this question must also be answered against appellant's contention. It seems to be conceded that a Court of equity may inquire into the conditions under which a pardon is issued, and adjudicate a question of fraud in obtaining the same; but it is con-

tended by appellant that such inquiry and such adjudication cannot be made in a *habeas corpus* proceeding. We do not agree with this contention, but think that the Court in this proceeding had jurisdiction to pass the order which his Honor, Judge Townsend, issued. The Court in which the petition was filed asking for a *habeas corpus* writ was selected by the petitioner, and the respondent, pursuant to the rule issued, made a return in that Court. The petitioner, having invoked the jurisdiction of the Court by filing his petition therein, is not in a position to question its jurisdiction to consider the case on its merits, while contending that the said Court should exercise the authority to grant unto the petitioner his liberty. This, in effect, is the anomalous position occupied by the petitioner. He contends that he is entitled to his liberty upon the ground that the Governor issued to him a pardon, and that the Court in this proceeding can exercise jurisdiction for the purpose of issuing an order granting unto him his liberty upon the strength of this purported pardon, while at the same time denying to the Court the jurisdiction to inquire into the validity of the purported pardon, and determine whether it was procured lawfully or by fraud as charged by the respondent. From our viewpoint the position is inconsistent.

The appellant further contends, in this connection, that the weight of authority upholds his position that the Court of equity is the only Court that can inquire into the validity of a pardon, and that an action must be instituted in that Court for that purpose. We are unable to agree with appellant. The only cases to which our attention has been called which upholds appellant's position are the cases of *Knapp v. Thomas*, 39 Ohio St., 377, 48 Am. Rep., 462, which was decided in the year 1883, by a divided Court, three to two; *In re Edymoin*, 8 How. Prac. (N. Y.), 478, decided in 1853; *State v. McIntire*, 46 N. C., 1, 58 Am. Dec., 566; *Com. v. Ahl*, 43 Pa., 53-57, decided in 1862; and I fail to find that

the Courts have followed these cases. The case of *Ex parte Smith,* 8 S. C., 495, cited by appellant as supporting his position, in which case the opinion of the Court was written by Mr. Justice McIver, later Chief Justice, not only does not support appellant's position on this point, but, in our opinion, strongly supports the position of the respondent, and is ample precedent for the order of Judge Townsend in considering and passing upon the validity of the purported pardon in question.

In the *Smith case,* as in the case at bar, on petition a writ of *habeas corpus* was issued, directed to the superintendent of the State penitentiary. Smith, a prisoner serving sentence, after conviction, in the State penitentiary, claimed his liberty on the strength of a purported pardon issued by D. H. Chamberlain as Governor of South Carolina. The superintendent of the penitentiary refused to recognize the purported pardon, upon the ground that the paper was not entitled to be respected as a pardon, because the person by whom it was signed was not at the time entitled to exercise the powers of Governor of the State, and the application for the writ was resisted upon the same ground; that Chamberlain's term of office had expired, and that Wade Hampton was at that time the lawful Governor of the State. Thereupon the Court, in the *habeas corpus* proceeding instituted by the petitioner, proceeded to inquire into and pass upon the validity of the purported pardon, and in doing so it was necessary to inquire into and decide who had been elected to and was entitled to hold the office of Governor of South Carolina, whether Chamberlain or Hampton. In this connection it may be stated that Chamberlain and Hampton were not parties to the proceeding, but it was necessary to decide the title to the office in order to pass upon the validity of the purported pardon in question in the *habeas corpus* proceeding. The circuit Judge decided the issue in favor of the petitioner, and ordered him released from imprison-

ment. On appeal to this Court the judgment of the circuit Judge was reversed, and the prisoner remanded to the custody of the *superintendent* of the penitentiary.

While the outcome of that case, remanding the prisoner to the custody of the superintendent of the State penitentiary, is not involved in the case at bar, the precedent set by the Court in that *habeas corpus* proceeding, by inquiring into and determining the validity of the purported pardon involved, supports respondent's position in the case at bar, and established a precedent for the action of Judge Townsend in inquiring into and passing upon the validity of the purported pardon involved in the case at bar. We may state, also, that a like precedent was set by the Court in the case of *Ex parte Norris*, 8 S. C., 408, another case cited by the appellant.

The case of *Ex parte Crump*, 10 Okl. Cr., 133, 135 P., 428, 47 L. R. A. (N. S.), 1036, cited by appellant, was a *habeas corpus* proceeding in the Courts of Oklahoma, similar to the one at bar, and in that case the Court inquired into and passed upon the validity of the purported pardon involved, just as Judge Townsend did in the case at bar, and as was done in *Ex parte Smith, supra,* and in *Ex parte Norris, supra.* The fact that in one instance the authority of the person who signed the purported pardon was involved, and in the other the fraudulent procurement of the signature of the person who signed the purported pardon was involved, could make no difference. In each instance it was a question of the validity of the purported pardon.

Under the report of the case of *Rathbun v. Baumel,* decided by the Courts of the State of Iowa, reported in 196 Iowa, 1233, 191 N. W., 297, 30 A. L. R., 216, the annotator in his valuable notes makes this statement with reference to the rule: "And it has been expressly held, although, as subsequently shown, there is some dissent, that a pardon obtained by fraud worked upon the executive granting is

thereby rendered void, and as such subject to attack on *habeas corpus,* where rights are claimed thereunder before the Courts. Thus, in *Com. ex rel. Crosse v. Halloway* (1863) 44 Pa., 210, 84 Am. Dec., 431, where a pardon was obtained by means of false and forged representations and papers, it was held that such facts rendered the pardon void, whether the papers themselves suggested the fraud or not, and that the suggestion of fraud could be raised by the Attorney General (and by him only) on *habeas corpus* issued to allow the prisoner to plead his pardon, and this, although the prisoner did not himself know of or participate in the fraud. * * * And in *Dominick v. Bowdoin* (1871), 44 Ga., 357, * * * the Court approved the rule that pardons obtained by fraud are void, and held that, upon suggestion of fraud upon the trial of *habeas corpus,* it was the *duty* of the Court to hear the evidence and pass upon its merits. So, in *Rosson v. State* (1887), 23 Tex. App., 287, 4 S. W., 897, * * * where a prisoner sought to obtain his release from custody on *habeas corpus* based upon a pardon from the Governor, but the Attorney General set up that the pardon was void, because obtained by fraud or granted by mistake, as shown by the record, it was held that a pardon so obtained is absolutely void where the records show such fraud or mistake. In this case the Governor, after legal delivery of the pardon, had the superintendent of prisons return the same, whereupon he wrote upon it a direction to cancel because 'issued on misinformation,' and the Court said that such indorsement, unrebutted by the person pardoned, was sufficient evidence on the face of the record to warrant the Court declaring the pardon void, since it established a *prima facie* case of fraud."

This was practically what was done in the case at bar. When Governor Richards discovered the fraud that had been practiced upon him in procuring the suspended sentence and purported pardon, he issued orders to the effect that

the said orders were withdrawn, canceled, overruled, and void, for the reason that he was convinced that the same were issued on misinformation and obtained by fraud, and made an entry on the record to that effect. Judge Townsend had this record before him, as well as the purported pardon, when he decided the question and issued his order in the *habeas corpus* proceeding.

The annotator, to which reference is above made, further commenting on the rule, stated: "In *Dominick v. Bowdoin,* (*Ga.*), *supra,* in discussing the question what fraud is sufficient to warrant holding a pardon void on *habeas corpus,* the Court said that misrepresentation of material facts upon which the Governor acted, and which facts ought to have prevented clemency, if known, or any concealment of material facts or suggestion of false views to the Governor to procure the pardon, ought to be considered." The dissenting authorities, to which the annotator referred as holding a contrary view, we have mentioned above, and called attention to the same.

In the case of *Com. v. Kelly* (1872), 9 Phila. (Pa.), 586, it was held that a pardon and remission of forfeiture procured by forgery and fraud practiced upon the executive are void, and that the Attorney General may raise the question of validity upon a rule to show cause why an order opening the judgment and staying execution thereon should not be vacated.

In the case of *Jamison v. Flanner,* a recent case, decided by the Supreme Court of the State of Kansas, in the year 1924, reported in 116 Kan., 624, 228 P., 82, 85, 35 A. the Court, in the course of his discussion of this question L. R., 973, Mr. Justice Harvey in delivering the opinion of stated:

"The correct rule, gathered from the authorities, may be thus stated: The Court does not take judicial notice of individual pardons. When one relies upon a pardon issued to him individually to relieve him from prison, or for any

other purpose, he must, in some way and in some proceeding, call it to the attention of the Court. *The manner and the nature of the proceeding in which it is called to the attention of the Court are not material.* When the Court's attention is called to the pardon, it will not inquire into the motives which prompted the pardoning official to issue the pardon, for to do so would be to usurp the pardoning power; but the Court will inquire into the authority of the pardoning official to issue the particular pardon in question, will inquire as to whether fraud was practiced upon the pardoning official, if that be suggested, though on that point much care must be exercised. * * * "

We are convinced that it is proper for the question of fraud charged in obtaining a purported pardon to be raised and passed upon in a *habeas corpus* proceeding, such as in the case at bar; and that this rule is supported by the weight of authority. Furthermore, in our opinion, there is no sound reason why the rule should not obtain. Of course, nothing herein stated is intended to convey the idea that the question could not have been raised and passed upon in a Court of equity in an action instituted for that purpose.

As to the error imputed to the Circuit Judge in ordering a reference in the matter, it is sufficient to state that, in our opinion, the action of the Circuit Judge in issuing the order of reference is supported by abundant authority and precedent.

We desire to state that, while we have not herein discussed the exceptions separately, we have considered all of them, and all questions fairly raised thereunder. We are unable to agree with appellant.

The exceptions should therefore be overruled, and the judgment of this Court should be that the order of his Honor, Judge Townsend, appealed from herein, be affirmed.

MR. JUSTICE STABLER, and MESSRS. CIRCUIT JUDGES JOHNSON, RICE, MANN, FEATHERSTONE, and RAMAGE concur in this dissent.