**Melvin ALEXANDER, on behalf of himself and others similarly situated, Plaintiff-Appellant,**

v.

**Lamar ALEXANDER, Governor, et al., Defendants-Appellees.**

No. 82–5055.

United States Court of Appeals, Sixth Circuit.

Argued March 10, 1983.

Decided May 3, 1983.

Larry D. Woods, Christine N. Entis, Woods, Bryan, Woods & Watson, William J. Marrett, Jr. (argued), Nashville, Tenn., for plaintiff-appellant.

Robert R. Campbell (argued), Hodges, Doughty & Carson, Knoxville, Tenn., William M. Leech, Jr., Atty. Gen. of Tenn., Robert Littleton, Sp. Asst. Atty. Gen. (argued), Nashville, Tenn., for defendants-appellees.

Before ENGEL and CONTIE, Circuit Judges, and SWYGERT, Senior Circuit Judge.[*]

CONTIE, Circuit Judge.

Melvin Alexander appeals from a summary judgment entered by the district court, 527 F.Supp. 796, in favor of Lamar Alexander, Governor of the State of Tennessee, Harold Bradley, Commissioner of the Tennessee Department of Corrections, and James Dickman, Superintendent of the Nashville Correctional Rehabilitation Center. Plaintiff Alexander brought this action under 42 U.S.C. §§ 1983 and 1985(3) after the defendants allegedly violated plaintiff's constitutional right to liberty by keeping him imprisoned for several months after his sentence had been commuted by former Governor Ray Blanton. For the reasons set forth below, we affirm in part and vacate and remand in part.

I.

On January 15, 1979, Tennessee Governor Ray Blanton signed documents which granted various forms of executive clemency to the plaintiff and 51 other inmates imprisoned at several facilities throughout the state. The plaintiff, who was incarcerated at the Correctional Rehabilitation Cen-

---

[*] The Honorable Luther M. Swygert, Senior Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

ter (CRC) in Nashville, Tennessee, received a commutation which reduced his sentence to "time served." After Governor Blanton signed the documents, they were acknowledged by the Secretary of State and forwarded to Murrell Pitts, Director of the Records Division of the Department of Corrections, for processing.[1]

Two days after Governor Blanton signed the clemency documents, Governor-elect Lamar Alexander was informed by United States Attorney Hal Hardin that Governor Blanton intended to grant releases to several inmates who were the targets of a federal grand jury investigation into payoffs by prisoners in exchange for clemency from the Governor's office. Hardin also indicated that several of the inmates who had received commutations on January 15 were also targets of the investigation. Hardin did not, however, disclose the names of the inmates who were under investigation.

As a result of Hardin's disclosures, Governor-elect Alexander was sworn in as Governor on January 17, 1979, three days before the scheduled inauguration date. Immediately after his swearing-in, Governor Alexander issued an order barring the release of all prisoners who had been granted pardons or commutations on January 15. Director Pitts and C. Murray Henderson, then Commissioner of the Department of Corrections, were instructed to assemble all pardon and commutation documents that had been signed by Governor Blanton on January 15 and to prevent further delivery of them. Pitts was also instructed not to permit the release of any additional inmates.[2] Accordingly, plaintiff Alexander was not released from the CRC.

Shortly thereafter, four of the prisoners who had received pardons or commutations from Governor Blanton filed habeas corpus petitions in Tennessee state court. After three inconsistent trial court decisions regarding the issue of whether the commuta-tion documents had been effectively "delivered," the Tennessee Court of Criminal Appeals ruled in April 1979 that the commutations became valid and binding upon delivery to the Department of Corrections. *Smith v. Thompson,* 584 S.W.2d 253, 256–57 (Tenn.Cr.App.1979). The Tennessee Supreme Court denied certiorari in the case, and the plaintiff was released from custody on May 29, 1979.

Throughout this sequence of events, defendant James Dickman served as superintendent of the Nashville CRC. Defendant Harold Bradley was appointed Deputy Commissioner of the Department of Corrections on January 17, 1979, and was sworn in as Commissioner of that department in March 1979. The record indicates that neither man was consulted regarding Governor Alexander's decision to prevent plaintiff's release from the CRC.

In June 1979, plaintiff and another former inmate whose prison sentence had been commuted brought this civil rights action under 42 U.S.C. §§ 1983 and 1985(3). The district court later granted summary judgment in favor of all defendants after ruling that: (1) Governor Alexander was not liable under Section 1983 because he was entitled to qualified immunity for his actions; (2) Bradley and Dickman were not liable under Section 1983 because they did not "cause" plaintiffs' alleged constitutional deprivation; and (3) all defendants were not liable under Section 1985(3) because plaintiffs had failed to prove the existence of a conspiracy. Plaintiff Alexander now brings this appeal.

## II.

The district court held that Governor Alexander was entitled to qualified immunity under the objective/subjective standard set out in *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975). In reaching its decision, however,

---

1. The Director of the Records Division of the Department of Corrections is responsible for crediting the prisoners' sentences with commutations and processing the releases of those inmates who are to be released. After processing, the Director writes the warden of the particular facility to order the release of the in-mate. *See Smith v. Thompson,* 584 S.W.2d 253, 254–55 (Tenn.Cr.App.1979).

2. The district court indicated that sixteen of the fifty-two inmates who received clemency from Governor Blanton had already been released from prison by January 17, 1979.

the court concluded that "[p]laintiffs have thus failed to prove that Governor Alexander is not entitled to the protection of the qualified immunity defense." While the plaintiff in a Section 1983 action bears the burden of pleading and proving that the defendant deprived him of a federal right while acting under color of state or territorial law, an assertion of qualified immunity is an affirmative defense which must be pleaded and proved by the defendant official. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980); *Wolfel v. Sanborn,* 666 F.2d 1005, 1006–07 (6th Cir.1981), *vacated and remanded on other grounds,* —— U.S. ——, 102 S.Ct. 3476, 73 L.Ed.2d 1363 (1982), *on remand,* 691 F.2d 270 (6th Cir.1982); *DeVasto v. Faherty,* 658 F.2d 859, 865 (1st Cir.1981); *Barrett v. Thompson,* 649 F.2d 1193, 1201 (5th Cir.1981), *cert. denied,* 456 U.S. 925, 102 S.Ct. 1969, 72 L.Ed.2d 440 (1982); *Chavis v. Rowe,* 643 F.2d 1281, 1288 (7th Cir.), *cert. denied,* 454 U.S. 907, 102 S.Ct. 415, 70 L.Ed.2d 225 (1981).

This conclusion is buttressed by the Supreme Court's recent decision in *Harlow v. Fitzgerald,* 457 U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In *Harlow,* the Court determined that the subjective element of the qualified immunity defense was "incompatible" with its prior admonition that insubstantial claims should not proceed to trial. Accordingly, it adopted an objective standard for evaluating claims of qualified immunity:

> We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

457 U.S. at ——, 102 S.Ct. at 2738.

When discussing how the new standard should be applied, however, the Court inferred that the burden of proving the qualified immunity defense should be on the defendant official:

> If the law [at the time of the alleged injury] was not clearly established, an official could not reasonably be expected to anticipate subsequent legal develop-

ments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful.... If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. Nevertheless, if the official pleading the defense claims extraordinary circumstances *and can prove* that he neither knew nor should have known of the relevant legal standard, the defense should be sustained. But again, the defense would turn primarily on objective factors.

*Id.* at ——, 102 S.Ct. at 2739 (Emphasis added).

■ Therefore, in light of *Harlow's* modification of the qualified immunity standard and the Supreme Court's recent instruction to this circuit to apply *Harlow* retroactively, *Wolfel v. Sanborn,* 691 F.2d 270, 271 (6th Cir.1982), we hold that a Section 1983 defendant retains the burden of pleading the qualified immunity defense, *Harlow v. Fitzgerald,* 457 U.S. at ——, 102 S.Ct. at 2737, and proving either that the law was not clearly established at the time of plaintiff's alleged injury, or, if the law was clearly established, that he neither knew nor should have known of the relevant legal standard due to extraordinary circumstances. *Id.* at ——, 102 S.Ct. at 2739. Since the district court placed the burden of proving the qualified immunity defense on the wrong party, we remand this case to the district court for reconsideration of this issue in light of this opinion.

### III.

■ With regard to plaintiff's other arguments, we hold that the district court properly dismissed plaintiff's Section 1983 claim against Bradley and Dickman because of plaintiff's failure to demonstrate a sufficient causal nexus between these defendants' conduct and plaintiff's injury. *See Monell v. New York City Department of Social Services,* 436 U.S. 658, 692, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *Rizzo v. Goode,* 423 U.S. 362, 370–71, 96 S.Ct. 598, 603, 46 L.Ed.2d 561 (1976). The record indicates that both men were responsible only

for implementing the Governor's directives and were in no way involved in the decision to prevent plaintiff's release from the CRC. *Cf. Kenney v. Fox,* 232 F.2d 288, 290 (6th Cir.), *cert. denied,* 352 U.S. 855, 77 S.Ct. 84, 1 L.Ed.2d 66 (1956); *Sebastian v. United States,* 531 F.2d 900, 904 (8th Cir.), *cert. denied,* 429 U.S. 856, 97 S.Ct. 153, 50 L.Ed.2d 133 (1976).

We also hold that plaintiff has produced no evidence of either a conspiracy between the defendants, or that the defendants were motivated by racial or other class-based animus, as is required by Section 1985(3). *Cf. Dowsey v. Wilkins,* 467 F.2d 1022, 1026 (5th Cir.1972).

Accordingly, we affirm the district court's dismissal of the Section 1985(3) claim against all defendants, and the Section 1983 claim against Bradley and Dickman. The remainder of the district court's judgment is vacated and remanded for further proceedings in accordance with this opinion.