**Charles L. BOALS, Plaintiff,**

v.

**Frank H. GRAY, Supt. etc., Defendant.**

**No. C 76–250.**

United States District Court,
N.D. Ohio, W.D.

Nov. 9, 1983.

James Melle, Columbus, Ohio, for plaintiff.

John C. Stamatakos, Asst. Atty. Gen., Columbus, Ohio, for defendant.

## OPINION AND ORDER

DON J. YOUNG, Senior District Judge:

This action was commenced by the plaintiff seeking damages, compensatory and punitive, injunctive, and declaratory relief, pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 & 2202. Jurisdiction is predicated upon 28 U.S.C. §§ 1343(3) and (4).

In his Amended Complaint, the plaintiff, a former permanent, nonprobationary civil service employee of the State of Ohio, stated four causes of action. The first alleges that the plaintiff was deprived of his rights of freedom of association and redress of grievances, by reason of being suspended from his employment for union activity. The second alleges that although under the Ohio law civil service employees may only be suspended for cause, he was suspended without any notice or hearing, was given no opportunity to refute the charges against him, and the length of his suspension was increased when he asked to be given due process rights. The third alleges that under the law of Ohio civil service employees have a right to select a collective bargaining agent without interference from the employer, and he was deprived of this right by the defendant. The fourth seeks a declaration that the second paragraph of Ohio Revised Code § 124.34, insofar as it authorizes suspension of civil service employees for five days [1] or less with-

---

1. Section 124.34 has been amended since the commencement of this action. As amended, it provides that only suspensions of three working days or less may be effected without, *inter alia,* a subsequent opportunity to appeal the suspension. Other than the change from five to three days, the version of § 124.34 in force when plaintiff was suspended and § 124.34 as amended are identical in all respects material to this

cause. The former read in pertinent part as follows:

The tenure of every officer or employee in the classified service of the state and the counties, civil service townships, cities, city health districts, general health districts, and city school districts thereof, holding a position under this chapter of the Revised Code, shall be during good behavior and efficient service and no

out hearing or appeal is unconstitutional on its face and as applied.

Numerous motions for dismissal and for summary judgment were filed by the parties and ruled on by the Court in memoranda which were filed on March 14, 1977, and July 23, 1980. These are incorporated in this Opinion by reference, but will not be set forth at length herein.

As a result of these motions, the Court refused to accept pendent jurisdiction of the third cause of action in the First Amended Complaint. The Court also abstained from ruling on the fourth cause of action until the plaintiff submitted the issue to the courts of the State of Ohio. The Court did so because it determined that § 124.34 was "susceptible of a construction whereby some procedure is mandated under Ohio law to be followed before suspensions of five days or less may be imposed, despite the fact that on its face, it does not expressly provide or ˙reject such a procedure." *Boals v. Gray,* No. C 76–250, Memorandum and Order, filed Mar. 14, 1977, at 7.

The plaintiff, and another person, did file such an action, which was carried through the state court system. The common pleas court, faced with cross-motions for summary judgment, found in favor of the defendants. *Boals v. Jackson,* No. 77CV–04–1556 (C.P. Franklin Co. 1979), *aff'd, Boals v. Jackson,* No. 79AP–203 (Ct.App. Franklin Co. Jan. 8, 1980). It reasoned that the interpretation of § 124.34 was governed by *Anderson v. Minter,* 32 Ohio St.2d 207, 291 N.E.2d 457 (1972), a decision which essentially held that a civil service employee suspended for five days or less could not have that suspension directly reviewed in the court of common pleas. The trial court ruled that the only review of suspensions for three days or less provided by state law is review for abuse of discretion pursuant to Ohio Revised Code § 124.56. That court, however, did not address explicitly the central question submitted to it for resolution, i.e., whether or not Ohio law requires some sort of *procedure* attendant to a suspension for less than five (now three) days.

The Franklin County Court of Appeals affirmed the trial court. *Boals v. Jackson,* No. 79AP–203 (Ct.App. Franklin Co. Jan. 8, 1980). Nevertheless, the appellate court did seem to recognize the plaintiff's right to a presuspension hearing as a matter of federal, rather than state, law. Relying on

---

such officer or employee shall be reduced in pay or position, suspended, or removed, except as provided in section 124.32 of the Revised Code, and for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, violation of such sections or the rules of the director of administrative services or the commission, or any other failure of good behavior or any other acts of misfeasance, malfeasance, or nonfeasance in office. A finding by the appropriate ethics commission, based upon a preponderance of the evidence, that the facts alleged in a complaint under section 102.06 of the Revised Code constitute a violation of Chapter 102 of the Revised Code may constitute grounds for dismissal. Failure to file a statement or falsely filing a statement required by section 102.02 of the Revised Code may also constitute grounds for dismissal.

In any case of reduction, suspension of more than five working days, or removal, the appointing authority shall furnish such employee with a copy of the order of reduction, suspension, or removal, which order shall state the reasons therefor. Such order shall be filed with the director of administrative services and state personnel board of review, or the commission, as may be appropriate.

Within ten days following the filing of such order, the employee may file an appeal, in writing, with the state personnel board of review or the commission. In the event such an appeal is filed, the board or commission shall forthwith notify the appointing authority and shall hear, or appoint a trial board to hear, such appeal with thirty days from and after its filing with the board or commission, and it may affirm, disaffirm, or modify the judgment of the appointing authority.

In cases of removal or reduction in pay for disciplinary reasons, either the appointing authority or the officer or employee may appeal from the decision of the state personnel board of review or the commission to the court of common pleas of the county in which the employee resides in accordance with the procedure provided by section 119.12 of the Revised Code.

Ohio Rev.Code Ann. § 124.34 (Page 1978), *amended by* Ohio Rev.Code Ann. § 124.34 (Page Supp.1982).

the affidavits submitted on behalf of defendants, the Court of Appeals, *inter alia*, ruled that there was evidence before the trial court to support the conclusion that plaintiffs were given all the process due them under *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). This holding is rather curious inasmuch as the trial court was not asked to and did not address the federal constitutional issue. The Supreme Court of Ohio, on April 4, 1980, refused to certify the record and hear the plaintiff's appeal.

After the state courts had ruled, this Court concluded that it should abstain no longer from determining the issue involved in the fourth cause of action.

This case was assigned for trial, which was held on July 30 and 31, 1980. The plaintiff's original demand for a trial by jury was waived, and the Court heard the matter. Decision was reserved until the case could be argued by written briefs, which have been filed. This Opinion will serve as the Court's findings of fact and conclusions of law. Fed.R.Civ.P. 52(a).

The facts of the case are rather simple, and with minor exceptions, there is no conflict in the testimony. In the following statements, these disputes are resolved without setting them forth in detail. The Court has no doubt that the plaintiff's version of any conflicting elements of the testimony are true. The defendant's conduct, demeanor, and appearance, particularly when viewed in the light of all of the evidence and the circumstances of the case, indicate that he essentially is unworthy of belief. When he disputes what other witnesses say, the Court is impelled not to believe him.

The Court finds that at the time of the events giving rise to this action, the plaintiff had been a civil service employee at the Mansfield, Ohio, Reformatory, for some four years. He had never had any disciplinary charges made against him. The defendant was the Superintendent of the Reformatory. One Captain Hartson was an intermediate superior of the plaintiff. The employment relationships between plaintiff and Hartson were cordial. They also were friendly socially.

Very shortly before the events in question, the plaintiff had joined a Union of employees at the Reformatory. He became active in its support, and encouraged other employees to join it.

On April 15, 1976, when plaintiff left work, he found a parking warning ticket on his car, although he had parked his car in that spot before without any problem.

When he came to work the next morning, he took his position in the deputy's office. Captain Hartson came through the door and said, "Charlie Boals, What's happening?" Plaintiff had the parking ticket in his hand. He said, "Does Gray got you handing these out?" Hartson replied, "Yep, sure does." Plaintiff said, "Why don't you take this and tell him to stick it up his ass." Hartson said, "Okay" and took the ticket.

Very shortly after that, plaintiff was told to go to defendant's office. He entered the office. Defendant was standing behind his desk. Hartson and another official, Charles Rowe, were seated behind plaintiff. Defendant asked him if he had seen the parking ticket before, if he had given it to Hartson, and if he had said defendant should stick it up his ass. Plaintiff responded "yes" to all those questions. Defendant immediately told him he had three days off for insubordination. Plaintiff then said, "Wait a minute. If this is the way it's going to be, I want the union representative, a lawyer. I want somebody here with me." Defendant said, "You have got five days off."

Plaintiff then raised a fuss, seeking to get the suspension increased so he could appeal it, but got nowhere.

The evidence showed that this type of proceeding was the defendant's standard method of handling short-term suspensions. The employee was called into the defendant's office without any notice as to the purpose of the meeting, was denied the right to have any representative present, although one employee who was so disci-

plined on three occasions had a severe speech impediment and could not make any defense to the charges unless he had someone to speak for him. When on one occasion an employee did have a witness at the "hearing", the defendant refused to speak to the witness.

On another occasion, the defendant followed his standard practice of not permitting the employee to offer any defense. He called an employee in, told her to take a seat, and told her she was removed as an employee before she was allowed to say anything. This action, of course, was appealable, was appealed, and the defendant's order was overturned by the State Personnel Board of Review.

On numerous occasions, employees were given short suspensions for perfectly proper union activities. Neither would the defendant permit union representatives to be present at disciplinary proceedings for employees who had requested the representative to appear with them.

It was stipulated that for the five days that plaintiff was suspended, he would have had gross earnings of $178.40. He would have accrued 2.3 hours of sick leave and 1.54 hours of vacation time at a rate of $4.46 per hour, or $17.13, and the State would have contributed $15.16 to plaintiff's account with the Public Employees' Retirement System.

It also was stipulated that at the time of trial, neither the defendant, the Ohio Department of Rehabilitation and Correction (plaintiff's employer), nor the Ohio Department of Administrative Services had promulgated any rules or regulations setting forth standards or procedures for imposing suspensions of five days (presently three days) or less.[2]

The Court finds that there are fiscal advantages accruing to the Superintendent of a reformatory from reducing the wages of particular employees by imposing suspensions. Between the time that the defendant became Superintendent in September, 1975, and the date of trial in this case, 140 employees were given short-term suspensions, resulting in a saving on wages of $17,783.92. This sum the defendant was permitted to, and did, use to defray other expenses of his operations.

The Court finds that although purportedly there is a grievance procedure in effect whereby suspended employees could seek some relief, as a practical matter all grievances filed prior to the trial of this case were resolved against the grievant.

The Court also finds that in those disciplinary procedures (discharges, and suspensions for more than five or three days) which are appealable, approximately one-third of all discharges and one-fourth of all suspensions are reversed or declared invalid by the Ohio State Personnel Board of Review.

The evidence leaves no doubt that in addition to the direct loss of wages and fringe benefits caused by unreviewable short-term suspensions, such suspensions are considered as affording grounds for discharge in the event of further disciplinary proceedings against the employee.

The evidence also leaves no doubt that the defendant's actions in this case were in substantial measure, if not entirely, the result of the defendant's hostility to union activities. They were calculated to interfere with the plaintiff's and other employ-

---

**2.** The Court would note that it has discovered a rule governing employee discipline in the Department of Rehabilitation and Correction that provides a modicum of procedure in short-term suspensions. Ohio Adm.Code 5120–7–05(B)(3) provides in pertinent part:

Prior to *any* suspension ... the following procedure shall apply:

(a) when the circumstances indicate that disciplinary action ... may be appropriate, the appointing authority ... *shall confer* with the employee about the facts of the case in private.

(b) If, *after* the conference with the employee involved, the appointing authority decides that a suspension ... is warranted, he shall *notify* the employee in writing of the action, [its] effective date ..., the statutory grounds and facts supporting the action.

*Id.* (emphasis added). As far as the Court can tell, this rule currently is in force and has been since at least 1978.

ees' rights to freedom of speech and association.

The evidence also shows that plaintiff resigned from his position on or before January 21, 1977.

It is clear that plaintiff is entitled to recover monetary damages against the individual defendant acting under color of state law, *see Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *cf. Foulks v. Ohio Department of Rehabilitation and Correction*, 713 F.2d 1229 (6th Cir.1983) (42 U.S.C. § 1981 damage action may be maintained against individual department employees), and also to have injunctive relief to clear his record of the charge against him, if he was denied due process of law, or if his rights of freedom of speech and association were denied him by the defendant. *See Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Boals v. Gray*, No. C 76–250, Memorandum and Order, filed March 14, 1977.

■ The foregoing statement with respect to damages, however, is subject to the following qualification:

> State officials have a right to qualified immunity for actions taken in their official capacity if they acted in good faith and on the basis of a reasonable belief that their actions were lawful. [citations omitted]... Under the doctrine of qualified, good faith immunity, a government official performing acts within the scope of his official conduct is insulated from damages under § 1983 if (1) at the time and in light of all circumstances there existed reasonable grounds for the belief that the action taken was appropriate and (2) the officer acted in good faith. (citation omitted)

*Bier v. Fleming*, 717 F.2d 308 at 312–313 (6th Cir.1983); *accord, Alexander v. Alexander*, 706 F.2d 751 (6th Cir.1983); *Stern v. Shouldice*, 706 F.2d 742 (6th Cir.1983); *cf. Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (federal officials entitled to qualified immunity in direct constitutional suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known."); *Hall v. United States*, 704 F.2d 246 (6th Cir.1983). The qualified immunity defense is an affirmative one and must be proven by the defendant official. *Harlow*, 457 U.S. at 815, 102 S.Ct. at 2737; *Alexander*, 706 F.2d at 754.

As already found above, the defendant intended to deprive the plaintiff of his right to join a union and to urge others to do so as well. The plaintiff has carried his burden of establishing that his constitutionally protected conduct was a substantial factor in the decision to discipline him. The defendant totally has failed to carry his burden of establishing that he would have suspended plaintiff in the absence of the protected conduct. *See Boals v. Gray*, No. 76–250, Memorandum and Order, filed March 14, 1977 (Section I); *cf. Stern v. Shouldice*, 706 F.2d 742 (6th Cir.1983).

With respect to the due process issue, this Court already has determined that "[p]laintiff has a property interest created by § 124.34 not to be suspended from employment except for cause." *Boals v. Gray*, No. C 76–250, Memoranda and Orders, filed March 14, 1977, and July 23, 1980; *see also Anderson v. Minter*, 32 Ohio St.2d 207, 211, 291 N.E.2d 457, 460 (1972) (§ 124.34 provides a "for cause" standard for all suspensions of nonprobationary employees); *Jackson v. Kurtz*, 65 Ohio App.2d 152, 416 N.E.2d 1064 (1979) (plaintiff, suspended for three days, may prosecute a 42 U.S.C. § 1983 claim in state court for violation of right to due process because § 124.34 creates a property right in unabused employment); *Hill v. Gatz*, 63 Ohio App.2d 170, 410 N.E.2d 1268 (1979); 81 Op. Ohio Att'y Gen. at 2–378 (1981). The remaining question is what process was due plaintiff. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

■ Upon consideration, the Court is convinced that plaintiff's federal right to due process of law was offended by the suspension procedure employed by defendant Gray. As already noted, the defend-

ant's standard practice was to summon the employee to his office without telling the employee the purpose for being called; he would then proceed to discipline the employee before giving the employee any real opportunity to offer a defense or to place the questioned conduct in context. In this case, when plaintiff asked for that opportunity, the defendant immediately increased the punishment.

■ The Court acknowledges that "due process" is a flexible concept which necessarily is tailored to the time, place, and circumstances of the relevant property deprivation. *See Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976); *Boals v. Jackson*, No. C 76–250, Memorandum and Order filed July 23, 1980, at 2. Inasmuch as plaintiff's short-term suspension was unreviewable, either administratively or in the state courts, due process required that he should have been given: (1) written notice of the charges against him and the evidence upon which they were based a reasonable amount of time before the hearing so he could have prepared his defense or explanation; (2) a presuspension hearing before a neutral and detached administrator necessarily not involved in any of the events giving rise to the suspension, wherein, with the assistance of a representative of his choice, he was afforded a fair opportunity to be heard in opposition to the charges against him, including the right to question witnesses against him; and (3) a written explanation of the administrator's decision and the reasons for it. Although exigent circumstances might dictate a more summary procedure, none were present in the facts before the Court.

In the case *sub judice*, plaintiff was given "notice," a "hearing" was held, and discipline was meted out all within a matter of minutes. Surely such a procedure, if one can call it such, did not accord plaintiff what has been termed the fundamental requirement of due process, "the opportunity to be heard 'at a meaningful time and in a meaningful manner'." *Mathews*, 424 U.S.

at 333, 96 S.Ct. at 901 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)).

The Court is confident, after considering the private interest affected by the official action, the risk of error in the challenged procedure and the probable value of other procedural safeguards, as well as the governmental interest involved, *Mathews*, 424 U.S. at 335, 96 S.Ct. at 903, that the skeletal procedure outlined above adequately addresses, adjusts, and balances the competing interests present in "for cause" short-term suspensions of three days or less.

Ohio Revised Code § 124.56 is titled "Investigations", and provides in substance that if the state personnel board of review has reason to believe that an officer has abused his power of appointment, lay-off, suspension or removal, it shall make an investigation, and if it finds this chapter, or its intent or spirit, has been violated, it can recommend the removal of the offending official. Obviously, this is scarcely a substitute for due process in short-term suspension proceedings, and reference to it begs the question here involved.

■ The record clearly establishes a total lack of any sort of due process and fair treatment. The plaintiff is entitled to recover the damages he has suffered by reason of the defendant's conduct and to expungement of the record of his suspension. Defendant Gray totally has failed to shoulder his burden of showing "that the law was not clearly established at the time of plaintiff's … injury, or, if the law was clearly established, that he neither knew nor should have known of the relevant legal standard due to extraordinary circumstances." *Alexander v. Alexander*, 706 F.2d 751, 754 (6th Cir.1983), *citing Harlow*, 457 U.S. at 818–819, 102 S.Ct. at 2738–2739. Defendant also has not presented any credible evidence of his good faith belief in the reasonableness of his actions or reasonable grounds supporting them. *Brandon v. Allen*, 719 F.2d 151 (6th Cir.1983). Consequently, he is not entitled to the protection of the shield of qualified immunity.

The plaintiff's rights to damages are based on two separate causes of action, one

for the denial of due process in the suspension hearing, and the other for depriving him of his right to freedom of speech and association. Different rules apply to the measure of damages in these two claims.

The law is clear that for a deprivation of due process, compensatory damages are limited to recovery of nominal damages only, unless actual damages are shown by evidence adduced in the case. Such damages may not be presumed from the mere fact of the wrong. *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). The wrongful suspension actually cost the plaintiff $195.53 in wages and fringe benefits. While in addition to plaintiff's wages, his employer would have had to contribute $15.16 to plaintiff's account with the Ohio Public Employees Retirement System, whether that contribution would have gained plaintiff any benefits, and if so, the amount of such benefits, is totally speculative, and can form no basis for an award of compensatory damages.

The plaintiff cannot recover for the damages that might have arisen from the fact of his suspension on his future employment relationships with the Department of Correction and Rehabilitation. Not only would such damages be highly speculative, but by expungement of the suspension from his record, any such untoward effects will be avoided.

With respect to the plaintiff's damages for deprivation of his right to freedom of speech and association, another rule applies. As the Supreme Court points out in *Carey*, different rules govern the compensatory damages recoverable in § 1983 actions for the deprivation of different constitutional rights. *See also Brandon, supra,* at 155.

Generally, this Court follows the rule that the deprivation of civil rights entitles the person deprived to substantial compensatory damages without any evidence of actual loss of property, damages either being inferred from the fact of the deprivation or affirmatively shown at trial.

*See Seaton v. Sky Realty Co.*, 491 F.2d 634 (7th Cir.1974) and authorities cited therein. There can be no doubt from the evidence before the Court that the improper actions of the defendant inflicted harm, discomfort, and a strong sense of frustration and loss upon the plaintiff. He had joined the union and became an enthusiastic convert to its cause, only to find himself punished, and in peril, if he dared to open his mouth, or to seek the support of his fellow members. For these wrongs he is entitled to be compensated. While a jury can usually do a better job of fixing the amount necessary to heal these wounds, when there is no jury the Court must, perforce, do the best it can. Under all of the circumstances shown in the evidence in this case, the plaintiff is entitled to recover the sum of $5,000.00 as damages for the deprivation of his rights of freedom of speech and association.

In addition to compensatory damages, the plaintiff also seeks an award of punitive damages.

The purpose of an award of punitive damages is either to punish the defendant, to serve as an example or warning to others who may contemplate acting as he did, or both. The law is clear that punitive damages may be awarded when the act of the defendant which caused actual damages to the plaintiff was maliciously, or wantonly, or oppressively done. *See Smith v. Wade*, ___ U.S. ___, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983) ("We hold that a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.")

The record in this case leaves no doubt that the defendant's actions were malicious and oppressive in the extreme. They were motivated by a purpose to destroy the union, and by the defendant's desire to flaunt the powers entrusted to him, in order to reduce his employees to abject surrender, and to increase his stat-

ure in his own eyes. The callousness and arbitrary nature of the defendant's conduct is shown so clearly that punishment is appropriate, not only because it is well-deserved, but to set an example for the deterrence of others, of whom there are many like the defendant in his field of work.

If Ohio Revised Code § 124.56 has any meaning, it certainly should be invoked against the defendant, but this Court has no power to invoke or enforce it, and has little expectation that the State authorities will do so. It is too cumbersome and uncertain a remedy. An award of punitive damages is within this Court's power, and will perhaps be as effective a deterrent to future misconduct as the State administrative proceedings would be.

The Court fixes the amount of punitive damages at $5,000 as being adequate, but not excessive, to achieve the purposes of such an award.

■ Plaintiff also seeks a judgment declaring Ohio Revised Code § 124.34 unconstitutional on its face and as applied. However, upon consideration, the Court deems it unwise to render a declaratory judgment at this juncture inasmuch as plaintiff resigned from his position with the Ohio State Reformatory prior to the trial in this cause, and apparently no longer is employed by the state. Under these circumstances, it appears that with respect to the statute's constitutionality, Count IV of plaintiff's amended complaint is moot.

The Fourth Circuit Court of Appeals, in *Holt v. Moore*, 541 F.2d 460 (4th Cir.1976), was confronted by a situation factually similar to the one presently facing this Court. In *Holt*, the plaintiff, who at one time was in state custody and had a federal detainer against him, alleged that North Carolina prison regulations prevented him from becoming eligible for certain privileges available to inmates against whom there were no federal detainers. In his action,

the plaintiff apparently sought damages, injunctive and declaratory relief. However, he was released from state custody after the action was commenced. The Court of Appeals held that once the plaintiff no longer was in state custody, he had "no interest whatever," *id.* at 462, *quoting Weinstein v. Bradford*, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975), in the challenged detainer policy followed by the state. As a result, the injunctive and declaratory aspects of the suit were remanded to be dismissed as moot. The damages portion of the case was allowed to proceed. *Id.* at 462; *see also Cameron v. Whirlwindhorse*, 494 F.2d 110 (8th Cir.1974).

The logic of the *Holt* decision applies with equal vigor to the cause *sub judice*. Plaintiff no longer is employed by the state and presumably no longer is exposed to any potential problems posed by the state as employer or the operation of § 124.34. Moreover, this action was not prosecuted as a class action. In a very real sense, then, as between the only plaintiff in this case and the defendant, there exists no one who now stands to gain by a declaratory judgment and there exists no one who currently presents the Court with a live dispute respecting the constitutionality of § 124.34.[3] This Court, consequently, will not make a declaration as to the constitutionality of § 124.34. *Holt*, 541 F.2d 460; *Caldwell v. Craighead*, 432 F.2d 213, 218 (6th Cir.1970), *cert. denied*, 402 U.S. 953, 91 S.Ct. 1617, 29 L.Ed.2d 123 (1971); *Cobb v. Aytch*, 472 F.Supp. 908, 919 (E.D.Pa. 1979), *modified*, 643 F.2d 946 (3d Cir.1981). Plaintiff, of course, is entitled to recover for the violations of his constitutional rights.

■ The plaintiff also is entitled to recover his attorneys fees in the conduct of this litigation. As usual, the Court suggests that the parties should attempt to reach an agreement as to the amount to be

---

**3.** A further consideration in this regard is the existence of Ohio Adm.Code 5120–7–05(B)(3), *supra*, note 2. Although this rule does not provide the basis for the Court's decision to refrain from declaring Ohio Revised Code § 124.34 un-

constitutional, a reasonable reading of it admits of an interpretation that could afford employees suspended for three days or less that degree of process found by this Court to be mandated by the Constitution.

awarded. In doing so, counsel should bear in mind the strong disapproval that the higher courts recently have expressed about litigating this amount. *See,* e.g., *Hensley v. Eckerhart,* — U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The law is now clear as to the standards and procedures for fixing attorneys fees. These standards are simple and objective. There is no real reason why counsel, if they approach this matter in a proper professional manner, cannot apply these rules without requiring the Court to have to do so. However, if counsel cannot quickly reach an agreement, the Court will, reluctantly, upon motion, fix the amount to be awarded.

THEREFORE, for the reasons stated, good cause therefor appearing, it is

ORDERED, that the plaintiff have judgment against the defendant in the sum of Five Thousand One Hundred Ninety-five Dollars and Fifty-three Cents ($5,195.53) for compensatory damages, and Five Thousand Dollars ($5,000.00) for punitive damages, in all the sum of Ten Thousand, One Hundred Ninety-five Dollars and Fifty-three Cents ($10,195.53), together with his costs herein expended; and it is

FURTHER ORDERED, ADJUDGED, AND DECREED, that the defendant cause the expungement from the plaintiff's records and personnel files of the traffic warning ticket issued April 15, 1976, and the disciplinary proceedings and suspension had on April 16, 1976; and it is

FURTHER ORDERED, that Count IV of plaintiff's Amended Complaint should be and hereby is DISMISSED AS MOOT; and it is

FURTHER ORDERED, that the plaintiff shall be awarded a reasonable sum to cover his attorneys fees and expenses incurred in this action. If the parties cannot agree as to the amount of such fees and expenses within thirty (30) days following the entry of this order, upon motion, the matter will be set for hearing to enable the Court to fix such amount.

IT IS SO ORDERED.