**Clinton DECKERT, Appellant (Plaintiff),**

v.

**John A. LANG, individually and in his official capacity as Secretary of the Board of Parole, Duane Shillinger, individually and in his official capacity as Warden of the Wyoming State Penitentiary, and the State of Wyoming, Appellees (Defendants).**

No. 88–194.

Supreme Court of Wyoming.

May 23, 1989.

Dwight F. Hurich of Preuit, Sowada & Hurich, Gillette, for appellant.

Richard E. Day and Stuart R. Day of Williams, Porter, Day & Neville, Casper, for appellee John A. Lang.

Terry L. Armitage, Asst. Atty. Gen., for appellee Duane Shillinger.

Before CARDINE, C.J., THOMAS, URBIGKIT and MACY, JJ., and KALOKATHIS, District Judge.

KALOKATHIS, District Judge.

This appeal is from the order granting summary judgment in favor of the defendants in a 42 U.S.C. § 1983 claim. Appel-

lant, Clinton Deckert, asserts error in the finding that appellees, John Lang and Duane Shillinger, were entitled to qualified immunity when they continued to hold Deckert at the Wyoming State Penitentiary after a commutation order signed by the Governor was delivered.

We affirm.

## FACTS

On September 16, 1985, in the Sixth Judicial District Court, Clinton Deckert was found guilty on one count of conspiracy to deliver a controlled substance and eight counts of delivery of a controlled substance, methamphetamine. On December 26, 1985, Deckert was sentenced to a term of one year to two and one-half years and fined $1,000 on Count II. On each of Counts III through X the sentence was also one year to two and one-half years and $1,000 fines. The court ordered "that the sentence in Count II shall run concurrently with the sentence in Count III, and all other sentences shall be deemed to run consecutively."

In November 1986, the Public Defender for Deckert requested the Probation and Parole Board to consider granting early parole to several prisoners, including Clinton Deckert, a twenty-three year old who had no prior convictions and faced a minimum of eight years.

On or about December 2, 1986, John Lang, then Secretary of the Board of Parole, was directed by Governor Herschler to prepare and submit a commutation of Deckert's sentence on Counts II and III. The sentences on Counts II and III ran concurrently while his other sentences ran consecutively. This order, along with a number of others, was reviewed and signed by Governor Herschler on December 5, 1986. The document was processed and mailed to the records manager of the state penitentiary and was received by Deckert shortly after December 5, 1986, according to his affidavit.

That order referred to

a commutation of his sentence of one (1) year to two and one-half (2½) years current. THEREFORE, by the authority vested in me as the Governor of the State of Wyoming, I do hereby commute the sentence of the said Clinton Deckert (WSP No. 13986) to a term of time served and if special good time is earned and allowed his sentence to expire December 5, 1986 upon order of final discharge by the Governor.

The order did not mention that Deckert was also serving consecutive terms for the remainder of his sentences.

Lang submitted an affidavit in support of his motion for summary judgment. Paragraph 7 stated:

[O]n or about December 11, 1986, it came to my attention that the commutation issued to Clinton Deckert could be read to state that all sentences, including both the concurrent and consecutive sentences imposed upon Clinton Deckert, were being commuted to time served.

That affidavit expressed Lang's belief that Governor Herschler's intention was to commute the concurrent sentences of Counts II and III only, with the remaining consecutive sentences to be served. Lang's affidavit referred to his request that the state penitentiary records manager retrieve the commutation previously issued to Deckert "to alter said commutation to reflect what I believed to be Governor Herschler's intention that only Counts II and III of Clinton Deckert's sentences be commuted to time served." Lang received notice on January 30, 1987, that Clinton Deckert refused to return his commutation documents. Deckert was not released at that time.

Duane Shillinger, the warden of the penitentiary, submitted an affidavit in support of his motion for summary judgment. He stated:

When the original commutation document was received, the penitentiary was immediately notified by John Lang, Parole and Probation Department, that an error existed on the original commutation document. The penitentiary was instructed to retrieve the document and to advise Mr. Deckert that an amended commutation document would be issued.

Shillinger's affidavit continues:

That on or about December 15, 1986, an amended commutation document was received from the Wyoming Probation and Parole Department. The amended document, again dated December 5, 1986, and signed by Governor Herschler stated that "... a commutation of his sentence of one (1) year to two and one-half (2½) years concurrent (Counts II and III) ... hereby commute ... to a term of time served (Counts II and III)[.]"

The warden believed he did not have authority to release an inmate unless official documents specified release, and he had been instructed "that the Governor of Wyoming would sign an amended commutation document." The record does not contain a document purporting to be the official amended commutation order or a copy of it. The only evidence pertaining to the amended order appears in the Shillinger affidavit as quoted above. The statement concerning the amended order stands uncontroverted.

The record is not clear about whether, when, and how an amended order came about. It is clear that Shillinger and Lang believed an amended order would issue. Based upon that belief, Deckert was not released.

Confusion about the amended order was addressed in Deckert's affidavit opposing the motion for summary judgment. He relied on exhibits, including copies of letters he received and affidavits from his prior hearing for a writ of habeas corpus. The affidavit incorporated by reference copies of correspondence between John Lang and former Governor Herschler. The correspondence with Governor Herschler was generated before Deckert was released by habeas corpus and after Herschler had retired as governor.[1]

Deckert's affidavit stated that after he received the original commutation, his counsel, the public defender, wrote the Board of Charities and Reform to inquire

about the status of the commutation. That affidavit stated John Lang replied to Deckert's counsel in a letter dated January 30, 1987:

As concerns Mr. Deckert, * * * [t]he sentence provides that Count II and III run concurrently, * * * and * * * the Governor's action was intended *only* to commute Counts II and III to time served with the remaining sentences (Counts IV thru X) still in effect and running consecutively.

On February 24, 1987, Lang formally requested Mr. Deckert to forward the original commutation order issued December 5, 1986, explaining that items were inadvertently omitted and needed to be inserted to clarify application of the commutation, even though it did "not effect [sic] the intent of the commutation."

Deckert responded to Lang's request in a letter March 2, 1987, suggesting "it would be easier, and far more concise, if you would make the intended alterations on the copy of the commutation I've included, and return it to me. This would allow me to view the changes before they are made."

Lang acknowledged Deckert's inquiry on March 4, 1987, and attached "the commutation showing the items (in red) that need to be adjusted."

Deckert's supplemental affidavit (in response to Shillinger's affidavit), stated that he "never received an original commutation, signed by Ed Herschler, December 5, 1986, that had any modifications to it."

On May 5, 1987, Deckert filed a writ of habeas corpus in the Second Judicial District Court, after an improper filing in the Wyoming Supreme Court was denied. Following a hearing, Deckert was ordered discharged from the penitentiary on June 16, 1987, by District Judge Robert Hill whose Order Directing Release stated:

1. Such materials do not meet the requirements of W.R.C.P. 56(e):

Form of affidavits; further testimony; defense required.—Supporting and opposing affidavits shall be made on *personal knowledge,* shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. *Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.* [Emphasis added.]

[O]n December 5, 1986, Governor Herschler executed a commutation of the sentence against Mr. Deckert to time served. This commutation on its face operates to reduce Petitioner's sentence to time served as of December 5, 1986. Accordingly, the State has no legal cause to detain Petitioner and hold him as a prisoner at the Wyoming State Penitentiary. Petitioner must be discharged forthwith.

The present action ensued in the First Judicial District Court on December 1, 1987, when Deckert filed a complaint requesting damages and attorney fees, pursuant to 42 U.S.C. § 1983, from Lang, Shillinger, and the State of Wyoming. Deckert alleged that he was unlawfully confined at the Wyoming State Penitentiary from December 5, 1986, when the Governor's original commutation order was received, until his release in June 1987. He claimed deprivation of his liberty and right to due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

Appellees filed a motion for summary judgment asserting the defense of qualified immunity. The motion was granted and Deckert filed this appeal June 8, 1988.

## DISCUSSION

Deckert states the issue on appeal as follows:

Did the District Court err in finding that the Defendants, Lang and Shillinger, were engaged in a discretionary function and that the rights of the Plaintiff were not clearly established, so that the Defendants were entitled to qualified immunity from liability from section 1983 civil rights laws as a matter of law?

Deckert's brief requests the court to decide:

1. Were the Defendants performing ministerial or discretionary functions in

failing to release Clinton Deckert after they received the commutation of sentence[?]

2. In their failing to release Clinton Deckert, did Defendants violate the clearly established statutory or constitutional right of Clinton Deckert which they, as reasonable people involved in the functioning of prisons should have known[?]

We have consistently adhered to the proposition that this court will not ordinarily develop issues other than those presented on appeal. "It should be equally clear that we do not ordinarily consider matters that have not been briefed or argued before this Court." *Bueno–Hernandez v. State*, 724 P.2d 1132, 1140 (Wyo.1986). Concerning the conduct of Lang, Deckert's brief goes no further than asserting that Lang had an absolute duty to release Deckert upon receipt of the original order of commutation.[2]

Moreover, in reviewing a summary judgment on appeal,

we first consider whether or not there is a genuine issue of material fact underlying the granting of the summary judgment. If there is no issue of material fact, we then decide whether the substantive law was correctly applied by the trial court.

*Sutherland v. Bock*, 688 P.2d 157, 158 (Wyo.1984).

"[W]e review the judgment in the same light as the district court, using the same information." *Garner v. Hickman*, 709 P.2d 407, 410 (Wyo.1985). When the party opposing the motion presents materials on which he intends to rely, these materials " 'should be as carefully tailored and professionally correct as any evidence which is admissible to the court at the time of trial.' " *Matthews v. Wyoming Department of Agriculture*, 719 P.2d 216, 221 (Wyo. 1986) (quoting *Lane Company v. Busch*

---

2. The essence of Deckert's theory is expressed in his brief as follows:

Just as when an official receives an order from the court, when the Appellees received the commutation signed by Governor Herschler and delivered to them, their's was not

to question how the order was to be put into effect, but to act on the order no matter whether the commutation was clear on its face, as was found by the District Court in the *hab[ea]s corpus* hearing, or it was ambiguous as will be discussed later.

*Development, Inc.*, 662 P.2d 419, 426 (Wyo. 1983)).

■ W.R.C.P. 56(e), and cases decided thereunder, hold that affidavits shall be made on personal knowledge and based on evidence about which the affiant is competent to testify. *Harris v. Grizzle*, 625 P.2d 747 (Wyo.1981). Accordingly, we cannot and do not consider certain correspondence executed by former Governor Herschler because it lacked sworn authentication. In addition, we will not consider what conduct Lang may have engaged in, other than that shown by the affidavits.

With these principles as guides, we embark upon our discussion of the applicable legal principles in this case. Appellant Deckert claims that upon receipt of the commutation order dated December 5, 1986, Lang and Shillinger were obligated to release him or at least to hold a hearing on the matter, and their failure to do so deprived him of his liberty interest without due process of law.

Lang and Shillinger do not contest the fact that a hearing was not held, but rather rely upon the defense of qualified immunity. This defense is set forth in *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), as follows:

> We therefore hold that government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Accordingly, this appeal presents three questions for resolution:

1. Were the actions of Lang and Shillinger discretionary?

2. At the time of the delivery of the commutation order, did the law of Wyoming "clearly establish" liberty interest rights for Deckert?

3. Was the conduct of Lang and Shillinger objectively reasonable?

Deckert claims the duties of Lang and Shillinger in regard to the commutation order were purely ministerial, and therefore the defense of qualified immunity would not be available to them. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. However, we determine that the tasks performed by Lang and Shillinger involved an element of discretion. Both Lang and Shillinger had a duty to protect the executive by examining the commutation order for errors or omissions. It was particularly important here, because the executive had signed the original commutation order. Corrections were suggested as soon as a problem became apparent.[3]

■ When a law does not specify the precise action an official must take, that official retains discretionary authority. See *Davis v. Scherer*, 468 U.S. 183, 196 n. 14, 104 S.Ct. 3012, 3020 n. 14, 82 L.Ed.2d 139 (1984). We cannot say that, with the delivery of the commutation order, nothing remained for judgment or discretion. Lang was faced with an order of commutation which he understood did not accurately reflect the will of the executive. Whether that order ever was amended by the executive or whether the executive had the power to amend a commutation order is not the issue. The issue is whether Lang's actions met the elements set forth above pertaining to the qualified immunity defense. Because the law never prescribed the specific procedure to be followed in regard to orders of commutation, the task of the prison officials who received such an order was not tantamount to an imperative. *Oyler v. State*, 618 P.2d 1042, 1048–49 (Wyo.1980). Nor did the law prescribe a fixed or ascertainable standard concerning the procedure to be followed by the prison officials. *Nietert v. Overby*, 816 F.2d 1464, 1467 (10th Cir.1987). We cannot say that the law unambiguously precluded Lang from withholding execution of the commutation order while he sought to obtain a clarification of its ambiguity. Therefore, we cannot agree

---

**3.** The Second Judicial District Court granted a writ of habeas corpus directing release of Deckert long after the delivery of the commutation order. The habeas corpus order was silent on the questions presented here and did not discuss the nature of any rights vested in Deckert at the time of delivery of a commutation order.

with Deckert that the responsibilities of Lang and Shillinger were purely ministerial. Thus, Lang and Shillinger have surmounted the threshold barrier to the availability of the defense of qualified immunity. We hold their actions were discretionary.

■ Concerning the second issue, *Harlow* states that: "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." 457 U.S. at 818–19, 102 S.Ct. at 2738.[4]

Wyoming law is rather skimpy concerning the effect of a commutation order. The Wyoming Constitution empowers the governor "to grant reprieves, commutations and pardons after conviction, for all offenses except treason and cases of impeachment." Wyo. Const. art. 4, § 5. Case law holds this power to be exclusive. *Stanton v. State*, 686 P.2d 587, 588–89 (Wyo.1984); *Kennedy v. State*, 595 P.2d 577, 578 (Wyo.1979); *State ex rel. Chatterton v. Grant*, 12 Wyo. 1, 73 P. 470, 471 (1903); *In re Moore*, 4 Wyo. 98, 31 P. 980, 981–82 (1893).

We have been unable to uncover any Wyoming statutes or cases which outline the method of granting a commutation or its legal effect; nor has Deckert in his brief provided any such authority. To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987), quoted in *Garrett v. Rader*, 831 F.2d 202, 204 (10th Cir.1987). With regard to this second question, Deckert argues that general legal principles are implicated which Lang and Shillinger should have understood and applied. However, Deckert cites no general legal principles dealing with the specific procedure which a prison official is bound to follow under the circumstances present here. Instead, Deckert refers to a "universal rule in the interpretation of pardons" as being an act of grace and, therefore, any limitation upon its operation should be strictly construed. 59 Am. Jur.2d, Pardon and Parole § 44 at 38 (1987). In addition, Deckert refers to another rule to the effect that if a pardon is obtained by fraud, the resolution of such a matter involves issues of fact which should be decided by a judicial tribunal. *Ex parte Bess*, 152 S.C. 410, 150 S.E. 54 (1929).

These general principles do not define the contours of Deckert's liberty interest rights with sufficient clarity so that Lang and Shillinger, as measured by an objective standard of reasonableness, should have understood that the continued detention of Deckert violated any of his rights.[5] This is particularly true because of their belief that the commutation order contained a clerical error.

We note that *Tate v. Alexander*, 527 F.Supp. 796 (M.D.Tenn.1981),[6] demonstrates a view which supports Lang and Shillinger. While we do not ground our decision on this opinion, we note that the defense of qualified immunity was made available to Governor Alexander when he rescinded former Governor Blanton's commutation order and ordered state officials not to release the plaintiff. Several inmates in Tennessee obtained habeas corpus relief in state courts. *Id.* at 798–99.

---

4. Without reiterating the general standard concerning summary judgment, we note that in cases of this nature *Harlow* observed: "On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred." 457 U.S. at 818, 102 S.Ct. at 2738.

5. We make this statement by strictly adhering to the record presented to the district court at summary judgment. While there may have arisen a set of conditions which would have compelled us to conclude that Lang should have known that he was violating Deckert's rights, we would, by necessity, be relying upon materials which would not meet the requirements of W.R. C.P. 56(e).

6. Affirmed in part and reversed in part on other grounds sub nom, *Alexander v. Alexander*, 706 F.2d 751 (6th Cir.1983); on remand, 573 F.Supp. 373 (M.D.Tenn.1983), and affirmed 751 F.2d 384 (6th Cir.1984) (unpublished opinion).

Since the law of Wyoming, and for that matter the general law, contains no well-developed legal principles defining the obligations or procedures to be followed by prison officials in matters involving commutations, we hold that Deckert had no clearly established rights which were violated. We also hold that, in view of the record, Lang and Shillinger could not have originally known, by application of the objectively reasonable standard, what the law required of them. Consequently, they are both entitled to the defense of qualified immunity, and the district court properly granted summary judgment in their behalf.

Affirmed.

URBIGKIT, Justice, concurring in part and dissenting in part.

On December 5, 1986, Clinton Deckert (Deckert), following a sentence for variant drug charges in Campbell County, Wyoming during the preceding year, was given a commutation. This document, executed under the constitutional power of the Wyoming Governor, duly signed and attested to by the Secretary of State on December 5, 1986 and thereafter delivered to the penitentiary inmate, stated a commutation to be effective immediately. Subsequently, as required by Wyo. Const. art. 4, § 5,[1] which provides the power of commutation, a report to the legislature in early 1987 also listed the Deckert commutation.

Deckert was not released from the penitentiary where he was incarcerated. Shortly after the commutation instrument had been delivered to the prisoner, Warden Duane Shillinger (Shillinger) was advised by John A. Lang (Lang), who serves as ex-officio Secretary of the Wyoming Board of Parole and as the Director of the Department of Probation and Parole, that an error existed because the commutation for Deckert's two concurrent and seven consecutive sentences was unintended.[2]

Lang, as either or both the Secretary of the Wyoming Board of Parole or as the Director of the Department of Probation and Parole, requested that Deckert return the original document "for correction." Lacking compliance, Lang edited a copy of the signed and issued commutation by inserting in red additional restrictive conditions which reduced the effect of the commutation. The exchange of correspondence between Lang and Deckert is informative. In communication with a representative of the public defender's office dated January 30, 1987, Lang stated that "[a]gain, the commutation document perhaps does not reflect the intent too clearly and I will request that the document be corrected to show the intent."

The record reflects correspondence between Lang to both the then retired Governor Ed Herschler and the succeeding Governor Mike Sullivan in further efforts to get the commutation amended "for correction." Neither did.

During this period of extended communications, Deckert remained in the penitentiary as shown by Shillinger's affidavit:

5. That on or about December 5, 1986, the penitentiary received an Execu-

---

1. Wyo. Const. art. 4, § 5 states:
   The governor shall have power to remit fines and forfeitures, to grant reprieves, commutations and pardons after conviction, for all offenses except treason and cases of impeachment; but the legislature may by law regulate the manner in which the remission of fines, pardons, commutations and reprieves may be applied for. Upon conviction for treason he shall have power to suspend the execution of sentence until the case is reported to the legislature at its next regular session, when the legislature shall either pardon, or commute the sentence, direct the execution of the sentence or grant further reprieve. He shall communicate to the legislature at each regular session each case of re-

mission of fine, reprieve, commutation or pardon granted by him, stating the name of the convict, the crime for which he was convicted, the sentence and its date, and the date of the remission, commutation, pardon or reprieve with his reasons for granting the same.

2. For general background on the events leading to the style of sentencing, see the historical development in the Campbell County grand jury cases: *Sword v. State,* 746 P.2d 423 (Wyo.1987) (Urbigkit, J., dissenting) and *Hennigan v. State,* 746 P.2d 360 (Wyo.1987) (Urbigkit, J., dissenting). *See also Gist v. State,* 766 P.2d 1149 (Wyo. 1988); *Burke v. State,* 746 P.2d 852 (Wyo.1987); *Kortz v. State,* 746 P.2d 435 (Wyo.1987); and *Gist v. State,* 737 P.2d 336 (Wyo.1987).

tive Department Commutation of Mr. Deckert's sentence. When the original commutation document was received, the penitentiary was immediately notified by John Lang, Parole and Probation Department, that an error existed on the original commutation document. The penitentiary was instructed to retrieve the document and to advise Mr. Deckert that an amended commutation document would be issued. Mr. Deckert was advised that the Governor's intent was to commute only one (1) of the consecutive sentences so that Mr. Deckert could begin serving the next consecutive sentence;

6. That on or about December 15, 1986, an amended commutation document was received from the Wyoming Probation and Parole Department. The amended document, again dated December 5, 1986, and signed by Governor Herschler stated that "... a commutation of his sentence of one (1) year to two and one-half (2½) years concurrent (Counts II and III) ... hereby commute ... to a term of time served (Counts II and III)";

7. That the Warden of the Wyoming State Penitentiary does not have the authority to release inmates unless official documents specify the release of the inmate. In Mr. Deckert's case, the Warden of the Wyoming State Penitentiary did receive a commutation document that was judged by the Wyoming Parole Department to be in error. The Warden, then with no document that specified Mr. Deckert's release, could not release Mr. Deckert. Specifically, the Warden had no authority to release Mr. Deckert per a document that had been judged to be in error by the originator of the document. Further, the original December 5, 198[6], commutation document made no mention of the remaining consecutive sentences and how those sentences were to be processed. Again, based on instructions received from the Wyoming Parole and Probation Department, the original commutation document was processed as being a faulty document. Too, the penitentiary Warden was well advised by the Parole and Probation Department that

Governor Herschler would be submitting a signed, amended commutation document. Again, the Warden had no authority to release Mr. Deckert.

The document to which Shillinger made reference in his affidavit was apparently the edited copy of a copy of the executed commutation which was changed after delivery of the original instrument. No other instrument of a changed commutation character for Deckert was ever produced.

Deckert was finally released on June 18, 1987 or more than six months after the effective date for commutation. This release was secured by a writ of habeas corpus in the district court which stated:

[A]nd the Court being fully advised in the premises hereby finds that on December 5, 1986, Governor Herschler executed a commutation of the sentence against Mr. Deckert to time served. This commutation on its face operates to reduce Petitioner's sentence to time served as of December 5, 1986. Accordingly, the State has no legal cause to detain Petitioner and hold him as a prisoner at the Wyoming State Penitentiary. Petitioner must be discharged forthwith.

The litigative history of the release of Deckert from the penitentiary as well as Robert W. Heggie, who was similarly affected by incarceration and commutation, through their habeas corpus releases is informative. Two prior proceedings in this court have occurred. Following receipt of the commutations dated December 5, 1986 and stated to be effective December 5, 1986 with sentences reduced to "time served," neither Heggie nor Deckert were released from confinement. Correspondence followed by the public defender to attempt to accomplish that result and lacking success for negotiation, both individuals filed a joint petition for a writ of habeas corpus in this court. The attorney general objected and also included a petition to disqualify the public defender. On the basis of the State's objections, the petition was denied since "the Petition for a Writ of Habeas Corpus should have been filed in the first instance with the court or judge most con-

venient in point of distance to the applicants * * *."

The two incarcerated individuals then filed a petition for habeas corpus in the Carbon County District Court where again the attorney general moved for summary adjudication. In that proceeding, Deckert succeeded and Heggie lost. The difference was that in the early stages of these events, after Lang had requested that the two individuals return their commutation documents "for correction," Heggie complied and Deckert refused.[3]

Since Heggie did return his commutation, it was edited by Lang to restrict its scope. *There is absolutely no evidence in this record* that the alteration of either commutation document was done with the approval or by the direction of Governor Herschler while he continued in office through the end of the year or his successor, Governor Sullivan. In fact, correspondence clearly demonstrates a contrary factual situation.

It was this status where Lang had altered one of the original commutation documents and had been foreclosed the opportunity to do the same thing to the other that the district court habeas corpus proceeding came before the district judge for decision. Attached to this opinion as appendices are copies of the original Deckert commutation ("A"), followed with a copy to which handwritten delineations were made by Lang or someone else at his direction ("B"), and the Heggie commutation as originally issued ("C") and as altered ("D").

Conversely, as to Heggie, the petition for writ of habeas corpus was dismissed when the court found "that the petition should be dismissed because the original commutation was surrendered and a corrected version returned to Petitioner." For final historical perspective, Heggie refiled a petition in this court and was released by order which accorded him the same relief in commutation as had been granted to Deckert.[4]

---

3. In answer to Deckert's request about what changes were intended to be made to his commutation, Lang redlined a copy with his alterations which then apparently became the document to which both Shillinger and Lang refer in affidavits. After seeing what would happen to the document if altered, Deckert continued to refuse to release the original instrument.

4. In pursuit of his effort to get the original commutation returned, Lang had written to Deckert on February 24, 1987:

We are hereby requesting *that you take some time out of your schedule* and forward to us (through the records office of the penitentiary) the original of the commutation issued to you by Governor Herschler on December 5, 1986.

As you know, we inadvertently omitted several items on the form that need to be inserted in order to clarify the precise application of the commutation, *even though the same does not effect [sic] the intent of the commutation.* [Emphasis added.]

Deckert answered on March 2:

Thank you for your letter of February 24, wherein you asked me to return the commutation I received on December 5, 1986. I have some questions regarding your request.

You state in your letter ". . . the same does not effect (sic) the intent of the commutation." What items, exactly, are you referring to? And what effect, exactly, will the changes have in the commutation I received?

Perhaps it would be easier, and far more concise, if you would make the intended alter-

ations on the copy of the commutation I've included, and return it to me. This would allow me to view the changes before they are made.

Are you aware that an officer of the Wyoming State Penitentiary, Randy Baunach, has threatened me with revocation of my commutation if I did not relinquish it to him? Was this threat made under the direction or with the knowledge of your office? This is a matter of some concern to me, and I would appreciate a response by you. I suspect Mr. Baunach was acting without direction in his threat.

Your answers to my questions would be greatly appreciated. I assure you of my continued cooperation in this matter.

Lang wrote again on March 4:

Thank you for your letter dated March 2, 1987, inquiring about the specifics relating to your commutation of sentence. I'm attaching the commutation showing the items (in red) that need to be adjusted.

As you know, you were convicted on nine (9) counts, one (1) count of "Conspiracy to Deliver a Controlled Substance" and eight (8) counts of "Delivery of a Controlled Substance." The Court Order makes reference to Counts II through X.

The Order provides that Counts II and III are to run concurrently, and Counts IV through X all run consecutively. The commutation applies only to Counts II and III and leaves Counts IV through X untouched, and this needs to be reflected on the commutation as that was the Governor's intent.

The redlined "adjustments" which were submitted to Deckert with the March 4 letter were not productive of the results desired by Lang. Lang then corresponded with both ex-Governor Herschler and Governor Sullivan with unsuccessful efforts to "adjust" the Deckert commutation document. In the meantime, Governor Sullivan, under the requirements of Wyo. Const. art. 4, § 5 in addressing a report to the legislature concerning pardons and commutations, reported that both sentences had been commuted to time served effective December 5, 1986.[5]

I am particularly disturbed by a statement in Lang's brief which is unsupported in this record and may be reflective in some part by the posture adopted by this court:

> Thereafter, Appellee Lang received notice from the Wyoming State Penitentiary that Appellant Deckert had refused to return his commutation documents. In addition, on or about December 15, 1986, an amended commutation document was forwarded to the Wyoming State Penitentiary, dated December 15, 1986, and signed by Governor Herschler, stating that "... a commutation of his sentence of one (1) year to two and one-half (2½) years concurrent (Counts II and III) ... hereby commute ... to a term of time served (Counts II and III).

The Heggie document was not corrected until approximately February 15, 1987 and the redlined, corrected document submitted by Lang to Deckert was enclosed with the letter of March 4, 1987. The statement in the brief is unfounded in every material regard, except that Deckert refused to return his commutation.

Conversely, in regard to what he did, one of Lang's affidavits reflects:

> 7. That on or about December 11, 1986, it came to my attention that the commutation issued to Clinton Deckert could be read to state that all sentences, including both the concurrent and consecutive sentences imposed upon Clinton Deckert, were being commuted to time served.

> 8. That I believed that Governor Herschler's intention was to only commute the concurrent sentences of Counts II and III, and that the remaining consecutive sentences imposed on Clinton Deckert remained to be served by Clinton Deckert.

> 9. That I then requested the Records Manager at the Wyoming State Penitentiary to retrieve the commutation papers previously issued to Clinton Deckert to alter said commutation to reflect what I believed to be Governor Herschler's intention that only Counts II and III of Clinton Deckert's sentences be commuted to time served.

> 10. That on or about January 30, 1987, I received notice from the Records Manager at the Wyoming State Penitentiary that Clinton Deckert refused to return his commutation documents.

Actually, unless there is another altered copy of the commutation which existed somewhere, the only document available

---

Perhaps I am not correctly "reading" you, but I get the distinct feeling you believe we are somehow trying to mislead and deprive you of something. However, look at it realistically. Do you honestly believe the Governor would wipe out all those sentences with one stroke of the pen?

As concerns your counselor, I don't know how this matter was presented to you, but do know that Governor's [sic] in the past have cancelled commutations. This is not to imply that such would be done in your case, although I believe the matter would eventually be discussed with the Governor.

I need to impress upon you that nobody is trying to cheat you out of something or present distorted facts to you. After all, I'm the guy who presented the majority of cases

to the Governor for commutations, discussed the merits of each case with him, and watched as he signed them. And I can assure you that there is no hanky-panky going on with your case, just a need to define the application of it to the individual sentences.

I trust you understand this; however, should you have further questions concerning this matter, please do not hesitate to write me.

**5.** On March 16, 1987, as part of the course of correspondence, when contacted, ex-Governor Ed Herschler wrote to Lang as Secretary of the Wyoming Board of Parole, including in his letter: "If the commutation instrument is not adequate, I doubt if I could give you any advice. I do not believe that I would have the authority to issue an amended commutation."

other than the original instrument is the redlined copy. This was, of course, the reason for Deckert's release by writ of habeas corpus in the district court. The alteration of a public document is further substantiated by the defensive posture of Lang:

13. That my actions taken with regard to Clinton Deckert and his commutation forms were done with no malicious motivation or intent to ward [sic] Clinton Deckert and were simply a good faith effort to correctly follow Governor Herschler's criterion for commutations.

14. That I have checked with Governor Herschler since this controversy has arisen and Governor Herschler confirmed that it was his general practice not to commute more than one sentence at a time for a particular inmate.

Separated from all of the hyperbole with which this case seems to have become engendered, Lang first altered Heggie's original commutation and secondly, Deckert's copy of his commutation. On this basis, by asserting his knowledge orally of the written intent of the Governor who exercised the constitutional power, Lang created himself the incarcerating authority. He undertook to exercise either the arguable right, if it does exist, of the Governor to amend or of the courts to construe. Unquestionably, the Governor did not amend and the courts were not given an appropriate early opportunity to construe by determinative petition which could have been requested by Lang.

Summary judgment on this resulting 42 U.S.C. § 1983 civil rights proceeding was differently presented by the three defendants, Shillinger, Lang, and the State of Wyoming. This divergence developed because Lang was represented by private counsel, whereas Shillinger and the State were represented by the office of the attorney general.

By affidavit, Lang contended that the text of the commutation was a mistake in execution:

8. That I believed that Governor Herschler's intention was to only commute the concurrent sentences of Counts II and III, and that the remaining consecutive sentences imposed on Clinton Deckert remained to be served by Clinton Deckert.

\* \* \* \* \* \*

11. That during my tenure as Secretary to the Board of Parole, it was not uncommon to correct errors made, which errors were contrary to Governor Herschler's instructions and intentions, especially in the instance where a good time release date was not accurately established.

Shillinger related:

5. That on or about December 5, 1986, the penitentiary received an Executive Department Commutation of Mr. Deckert's sentence. When the original commutation document was received, the penitentiary was immediately notified by John Lang, Parole and Probation Department, that an error existed on the original commutation document. The penitentiary was instructed to retrieve the document and to advise Mr. Deckert that an amended commutation document would be issued. Mr. Deckert was advised that the Governor's intent was to commute only one (1) of the consecutive sentences so that Mr. Deckert could begin serving the next consecutive sentence;

\* \* \* \* \* \*

7. That the Warden of the Wyoming State Penitentiary does not have the authority to release inmates unless official documents specify the release of the inmate. In Mr. Deckert's case, the Warden of the Wyoming State Penitentiary did receive a commutation document that was judged by the Wyoming Parole Department to be in error. The Warden, then with no document that specified Mr. Deckert's release, could not release Mr. Deckert. Specifically, the Warden had no authority to release Mr. Deckert per a document that had been judged to be in error by the originator of the document. Further, the original December 5, 198[6], commutation document made no mention of the remaining consecutive sentences and how those sentences were to be pro-

cessed. Again, based on instructions received from the Wyoming Parole and Probation Department, the original commutation document was processed as being a faulty document. Too, the penitentiary Warden was well advised by the Parole and Probation Department that Governor Herschler would be submitting a signed, amended commutation document. Again, the Warden had no authority to release Mr. Deckert;

8. That the amended commutation document did specify that only Count II and III of the total consecutive sentences were to be commuted. The penitentiary Warden did act according to the information described on the amended commutation document;

9. That Mr. Deckert did file a Writ of Habeas Corpus regarding the conflict between the original and the amended commutation documents. The Warden of the Wyoming State Penitentiary did abide with the district judge's decision regarding the commutations;

10. That, in summary, the Warden did not refuse to recognize the commutation issued by the governor. The Warden was instructed that the original commutation document was in error. Further, the penitentiary Warden did not alter any commutation document: the Warden was instructed that the original document was in error and that an amended document to be signed by the governor, would be served upon the penitentiary. Again, the Warden has no authority to release any inmate without specific authorization. When the Warden was specifically instructed that the original commutation was in error, the Warden had no authority to release Mr. Deckert and/or to even amend any of the consecutive sentences.

I differ from the majority because I do not find that Shillinger and Lang stand in a common relationship to exposed liability for unconstitutional confinement of a person. The only question with which Shillinger was faced was his reliance on the direction given by Lang. I do not ascribe a duty to Shillinger to investigate what Lang was doing to an official document. I concur in the result affirming summary judgment for Shillinger, but not for the reasons stated by the majority. My basis for affirmation is that he was only "taking orders" from an invested authority.

However, I must dissent to the affirmation of summary judgment for Lang. The elemental issue is whether a state official can alter an officially executed state document signed by a superior in order to correct what he may consider to have been his mistake with action taken illegally and improperly after execution and delivery of the original document. Further inquiry is whether by this conduct he can escape liability for confinement retention of the individual against whom his document changing activities are pursued. In plain language, Lang, without a scintilla of authority, changed action taken by the Governor exercising his constitutional power to retain Deckert in the penitentiary. What kept Deckert in the penitentiary was the affirmative action taken by a state official to alter an official document. The issue remains whether a state official can manicure a state record to keep someone in confinement without liability for imprisonment when that state official feels that his faulty draftsmanship may have originally created an error and especially where, as in this case, neither the prior Governor nor the succeeding Governor ever did anything to correct the official document.

I cannot agree factually or by application of case precedent that this action of the state official in changing a government document is discretionary. No case is found which affords qualified immunity to state officials for altering official records. Compare within the criminal code, W.S. 6–3–604, fraud against testamentary instruments and government records; penalties; government record defined and W.S. 6–5–108, issuing false certificate; penalties.

The direction to Shillinger to incarcerate and hold in confinement comes from the judicial sentence and issued mittimus. His obligation to release comes from the expiration of time, an order from the Wyoming Board of Parole or a court of this state. It was by the post-delivery editing process of

the document signed by the Governor and attested to by the Secretary of State that Lang created a new obligation for Shillinger to continue to confine the prisoner in the penitentiary. To that clearly illegal conduct, no discretionary authority can be appended.

I reluctantly respond to the philosophical inquiry of the majority that the objective standard of reasonableness of a public official can include changing or forging a governmental document even when stated to be done to correct a prior mistake in composition. This is no different than if the attorney-at-law or law clerk, feeling that the judge made a "clerical" mistake, changed a document after it had been signed and filed to authenticate accomplishment of a different court result.

It is my perception that we do not get to the discretionary or ministerial dichotomy since we are foreclosed by demonstrated illegality. I premise my review in affirming the summary judgment for Shillinger on the basis that no issue upon which liability could be premised was presented within the record. However, I would reverse for further proceedings as to Lang to determine liability through a proper trial. No character of immunity can be imputed to Lang's conduct which absolves proper consideration of liability under the United States Constitution in protection of the liberty interest of the incarcerated individual for whom the commutation had been granted.

Here, without question, a constitutional officer, the Governor, exercised his constitutional power for the commutation of a penal sentence. That official document was duly written, signed, sealed, authenticated by the Secretary of State, and delivered to the beneficiary as the exercise of that power provided in Wyo. Const. art. 4, § 5. The propriety and effectiveness of that gubernatorial act has been settled in this state since *In re Moore,* 4 Wyo. 98, 31 P. 340 (1892). *See likewise, Thomas v. Morris,* 844 F.2d 1337 (8th Cir.1988), *reh'g denied* (6/9/88), *cert. granted* —— U.S. ——, 109 S.Ct. 781, 102 L.Ed.2d 773 (1989), which applies the plain language of the

commutation. Lang took it upon himself to change the document in order to keep the beneficiary of the commutation in confinement. This conduct produces no proper basis for application of a qualified immunity to avoid liability under 42 U.S.C. § 1983.

This was not a *Marbury v. Madison,* 5 U.S. [1 Cranch] 137, 2 L.Ed. 60 (1803) executive action undelivered commission. Conversely, in the exercise of clearly stated constitutional authority, the Governor executed and delivered Deckert's commutation. Thereafter, Lang abjured either litigative construction or gubernatorial re-examination in making the confinement decision himself. Instead, he chose to change the document to redefine a supposed intent and then directed Shillinger to retain the incarcerated prisoner based on his change.

Changing a gubernatorial document is not a discretionary attribute of public employment. Consequently, when we look at what Lang did, it is clear that it was not discretionary, and qualified immunity cannot be applied from the totally dissimilar authorities of *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139, *reh'g denied* 468 U.S. 1226, 105 S.Ct. 26, 82 L.Ed.2d 919 (1984); and *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Those guiding authorities do not relate to these facts. Likewise, this was not a discretionary parole release consideration addressed in *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). Furthermore, the issues presented in *Tate v. Alexander,* 527 F.Supp. 796 (M.D.Tenn.1981) and *Alexander v. Alexander,* 706 F.2d 751 (6th Cir.1983), where gubernatorial action was taken in regard to commutation given in conjunction with bribery by a predecessor, cannot be factually compared to this case where no alternative nor amendatory action from the office of the Governor occurred. Actually, Tennessee Governor Blanton's "bizarre episode in Tennessee history" as related in *Tate* and its appellate version in *Alexander* is precedent that Lang, even if he might have been Governor, could not necessarily

substantively re-write the executed and delivered commutation. *Tate,* 527 F.Supp. at 798.

Unfortunately, in this case, any discovery to develop an adequate record was initially decided by motions for protective orders on behalf of each appellee. For reasons undisclosed in this record, an order granting the relief was entered which indicated approval of all counsel pending resolution of the motion for summary judgment. In result, Deckert never obtained discovery to explore what Lang did, when and why, as an asserted cause for the public official to alter the formal government documents which granted sentence commutation.

I would reverse for trial as to Lang, including adequate examination and cross-examination of the participants to examine exactly what steps were taken and why Deckert was retained in the state penitentiary after receipt of his commutation.

The thesis of my dissent is effectively stated in Justice Powell's majority opinion in *Harlow,* 457 U.S. at 819, 102 S.Ct. at 2738, which correctly recognized that we are not tested with lawfully accomplished discretionary conduct in what Lang did to keep Deckert in the penitentiary:

> Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained. But again, the defense would turn primarily on objective factors.

By defining the limits of qualified immunity essentially in objective terms, we provide no license to lawless conduct. The public interest in deterrence of unlawful conduct and in compensation of victims remains protected by a test that focuses on the objective legal reasonableness of an official's acts. Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action.

It is not unlikely that a jury might find that what Lang did was not objectively reasonable as measured by reference to clearly established law. *Id.* at 818, 102 S.Ct. at 2738. *See also Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). The burden of proof rested with Lang to plead and provide a defense of qualified immunity. *Alexander,* 706 F.2d 751. Considering the summary judgment status of this case disposition, I remain unconvinced that the action of Lang of altering a government document justified court established approbation of an immunity defense as a matter of law or an issue of fact. *Cordova v. Gosar,* 719 P.2d 625 (Wyo.1986). I fear when this character of conduct is immunized, we write in real blood.

Consequently, I concur in part and dissent in part.

## APPENDIX A

# The State of Wyoming

### EXECUTIVE DEPARTMENT

**Whereas,** _____ CLINTON DECKERT (WSP NO. 13986) _____

WAS AT THE __SEPTEMBER 1985__ TERM OF THE DISTRICT COURT WITHIN AND FOR THE

COUNTY OF __CAMPBELL__ CONVICTED OF THE CRIME OF _____

__CONSPIRACY TO DELIVER A CONTROLLED SUBSTANCE AND DELIVERY OF A CONTROLLED SUBSTANCE__

AND SENTENCED BY SAID COURT TO IMPRISONMENT IN THE WYOMING STATE PENITENTIARY FOR A TERM OF

__ONE (1) YEAR TO TWO AND ONE-HALF (2½) YEARS CONCURRENT__

**And Whereas,** _____ CLINTON DECKERT (WSP NO. 13986) _____

AND OTHERS HAVE THIS DAY MADE APPLICATION TO ME TO GRANT UNTO SAID _____

__CLINTON DECKERT (WSP NO. 13986)__

A COMMUTATION OF __HIS__ SENTENCE OF _____

__ONE (1) YEAR TO TWO AND ONE-HALF (2½) YEARS CONCURRENT__

**Therefore,** BY THE AUTHORITY VESTED IN ME AS THE GOVERNOR OF THE STATE OF WYOMING, I DO

HEREBY COMMUTE THE SENTENCE OF THE SAID _____

__CLINTON DECKERT (WSP NO. 13986)__

TO A TERM OF __TIME SERVED__ AND IF SPECIAL GOOD TIME IS EARNED AND

ALLOWED HIS SENTENCE TO EXPIRE __DECEMBER 5, 1986__

UPON ORDER OF FINAL DISCHARGE BY THE GOVERNOR.

**In Testimony Whereof,** I HAVE HEREUNTO SET MY HAND

AND CAUSED TO BE AFFIXED THE GREAT SEAL OF THE STATE

OF WYOMING, AT CHEYENNE, THIS __5TH__

DAY OF __DECEMBER__ A.D. 19 __86__

_____
Governor of Wyoming

BY THE GOVERNOR

_____
Secretary of State

# APPENDIX B

# The State of Wyoming

**FILED**

MAY 11 1988

Gerrie E. Bishop
Clerk of the District Court

### EXECUTIVE DEPARTMENT

**Whereas,** _____ CLINTON DECKERT (WSP NO. 13986) _____

WAS AT THE __SEPTEMBER 1985__ TERM OF THE DISTRICT COURT WITHIN AND FOR THE

COUNTY OF __CAMPBELL__ CONVICTED OF THE CRIME OF _One court of_

__CONSPIRACY TO DELIVER A CONTROLLED SUBSTANCE AND DELIVERY OF A CONTROLLED SUBSTANCE__
_(eight counts)_

AND SENTENCED BY SAID COURT TO IMPRISONMENT IN THE WYOMING STATE PENITENTIARY FOR A TERM OF

ONE (1) YEAR TO TWO AND ONE-HALF (2½) YEARS CONCURRENT _(Counts II & III)_

**And Whereas,** _____ CLINTON DECKERT (WSP NO. 13986) _____

AND OTHERS HAVE THIS DAY MADE APPLICATION TO ME TO GRANT UNTO SAID _____

CLINTON DECKERT (WSP NO. 13986)

A COMMUTATION OF __HIS__ SENTENCE OF _____

ONE (1) YEAR TO TWO AND ONE-HALF (2½) YEARS CONCURRENT _(Counts II & III)_

**Therefore,** BY THE AUTHORITY VESTED IN ME AS THE GOVERNOR OF THE STATE OF WYOMING, I DO

HEREBY COMMUTE THE SENTENCE OF THE SAID _____

CLINTON DECKERT (WSP NO. 13986)

TO A TERM OF __TIME SERVED__ _(Counts II & III)_ AND IF SPECIAL GOOD TIME IS EARNED AND

ALLOWED HIS SENTENCE TO EXPIRE __DECEMBER 5, 1986__

UPON ORDER OF FINAL DISCHARGE BY THE GOVERNOR.

**In Testimony Whereof,** I HAVE HEREUNTO SET MY HAND
AND CAUSED TO BE AFFIXED THE GREAT SEAL OF THE STATE
OF WYOMING, AT CHEYENNE, THIS __5TH__
DAY OF __DECEMBER__ A.D. 19 __86__

_____
Governor of Wyoming

BY THE GOVERNOR

_____
Secretary of State

APPENDIX C

# The State of Wyoming

## EXECUTIVE DEPARTMENT

**Whereas,** ROBERT W. HEGGIE (WSP NO. 13990)

WAS AT THE SEPTEMBER 1985 TERM OF THE DISTRICT COURT WITHIN AND FOR THE

COUNTY OF CAMPBELL CONVICTED OF THE CRIME OF

AID AND ABET DELIVERY OF A CONTROLLED SUBSTANCE (3 COUNTS)

AND SENTENCED BY SAID COURT TO IMPRISONMENT IN THE WYOMING STATE PENITENTIARY FOR A TERM OF

FOUR (4) TO EIGHT (8) YEARS

**And Whereas,** ROBERT W. HEGGIE (WSP NO. 13990)

AND OTHERS HAVE THIS DAY MADE APPLICATION TO ME TO GRANT UNTO SAID

ROBERT W. HEGGIE (WSP NO. 13990)

A COMMUTATION OF HIS SENTENCE OF FOUR (4) TO EIGHT (8) YEARS

**Wherefore,** BY THE AUTHORITY VESTED IN ME AS THE GOVERNOR OF THE STATE OF WYOMING, I DO

HEREBY COMMUTE THE SENTENCE OF THE SAID

ROBERT W. HEGGIE (WSP NO. 13990)

TO A TERM OF TIME SERVED AND IF SPECIAL GOOD TIME IS EARNED AND

ALLOWED HIS SENTENCE TO EXPIRE DECEMBER 5, 1986

UPON ORDER OF FINAL DISCHARGE BY THE GOVERNOR.

**In Testimony Whereof,** I HAVE HEREUNTO SET MY HAND

AND CAUSED TO BE AFFIXED THE GREAT SEAL OF THE STATE

OF WYOMING, AT CHEYENNE, THIS 5TH

DAY OF DECEMBER A.D. 19 86

Governor of Wyoming

BY THE GOVERNOR:

Secretary of State

## APPENDIX D

# The State of Wyoming

---

### EXECUTIVE DEPARTMENT

---

**Whereas,** _____ ROBERT W. HEGGIE (WSP NO. 13990) _____

WAS AT THE ___ SEPTEMBER 1985 ___ TERM OF THE DISTRICT COURT WITHIN AND FOR THE

COUNTY OF ___ CAMPBELL ___ CONVICTED OF THE CRIME OF _____

___ AID AND ABET DELIVERY OF A CONTROLLED SUBSTANCE (3 COUNTS) ___

AND SENTENCED BY SAID COURT TO IMPRISONMENT IN THE WYOMING STATE PENITENTIARY FOR A TERM OF

___ FOUR (4) TO EIGHT (8) YEARS - (3 CONSECUTIVE SENTENCES ___

**And Whereas,** _____ ROBERT W. HEGGIE (WSP NO. 13990) _____

AND OTHERS HAVE THIS DAY MADE APPLICATION TO ME TO GRANT UNTO SAID _____

___ ROBERT W. HEGGIE (WSP NO. 13990) ___

A COMMUTATION OF ___ HIS ___ SENTENCE OF ___ FOUR (4) TO EIGHT (8) YEARS ON COUNT I ___

**Therefore,** BY THE AUTHORITY VESTED IN ME AS THE GOVERNOR OF THE STATE OF WYOMING, I DO

HEREBY COMMUTE THE SENTENCE OF THE SAID _____

___ ROBERT W. HEGGIE (WSP NO. 13990) ___

TO A TERM OF ___ TIME SERVED ON COUNT I ___ AND IF SPECIAL GOOD TIME IS EARNED AND

ALLOWED HIS SENTENCE TO EXPIRE ___ DECEMBER 7, 1990 ___

UPON ORDER OF FINAL DISCHARGE BY THE GOVERNOR

**In Testimony Whereof,** I HAVE HEREUNTO SET MY HAND

AND CAUSED TO BE AFFIXED THE GREAT SEAL OF THE STATE

OF WYOMING, AT CHEYENNE, THIS ___ 5TH ___

DAY OF ___ DECEMBER ___ A.D. 19 __

_____
Governor of Wyoming

BY THE GOV